1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  KYLE A. LEWIS, State Bar No. 201041
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5500
     Fax:  (415) 703-5843
8    Email:  Kyle.Lewis@doj.ca.gov

9  Attorneys for Defendants James Tilton, Jeanne
   Woodford, Suzan Hubbard, Anthony P. Kane, Ben
10 Curry, W. J. Hill, B. Hendrick, and N. Grannis

11

12               IN THE UNITED STATES DISTRICT COURT

13            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15 | **ARMANDO VINCENT MUNOZ,** | C 07-3846 JF

16 |                          Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

17 |         **v.**

18 | **JAMES TILTON, et al.,**

19 |                          Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................ 2

INTRODUCTION ............................ 2

STATEMENT OF ISSUES ............................ 3

    A.  Plaintiff's First Amendment Claim Must Be Dismissed as He Fails to State a Claim Under Which Relief May Be Granted. ............................ 3

    B.  Plaintiff Has No Constitutional Claim Arising From the Handling of His Inmate Grievance. ............................ 3

    C.  Plaintiff Fails to State a Claim of Supervisor Liability. ............................ 3

    D.  Defendants Are Entitled to Qualified Immunity. ............................ 4

    E.  Plaintiff Fails to Sufficiently Plead His Claim for Punitive Damages. ............................ 4

STATEMENT OF THE CASE ............................ 4

ARGUMENT ............................ 5

    I.  STANDARD OF REVIEW ............................ 5

    II.  PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE FREE EXERCISE OF RELIGION WAS NOT VIOLATED BY DEFENDANTS' WITHHOLDING OF THE COMPACT DISCS. ............................ 6

        A.  Plaintiff's Religion Does Not Mandate that He Receive Religious CDs. ............................ 7

        B.  Even If Receiving Religious CDs is Mandated by Plaintiff's Religion, Defendants' Failure to Allow Plaintiff's Receipt of CDs Does Not Amount to a First Amendment Violation. ............................ 8

    III.  DEFENDANTS HEDRICK, HILL, AND GRANNIS MUST BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BECAUSE PLAINTIFF'S CLAIMS AGAINST THEM ARISE SOLELY FROM THE HANDLING OF HIS INMATE GRIEVANCE ............................ 10

    IV.  PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS TILTON, WOODFORD, HUBBARD, KANE, CURRY, HILL, AND GRANNIS ARE LIABLE BASED ON THE THEORY OF SUPERVISOR LIABILITY. ............................ 11

    V.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............................ 13

    VI.  PLAINTIFF FAILS TO STATE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR PUNITIVE DAMAGES. ............................ 15

CONCLUSION ............................ 16

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.        *Munoz v. Tilton, et al.*
C 07-3846 JF

i

## TABLE OF AUTHORITIES  (continued)

**Page**

<u>**Cases**</u>

*Anderson v. Creighton*
    483 U.S. 635, 640 (1987)     14

*Baker v. McCollan*
    443 U.S. 137, 140 (1979)     6

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696, 699 (9th Cir. 1990)     6, 11

*Bell Atlantic Corp. v. Twombly*
    127 S. Ct. 1955, 1964-65 (2007)     5

*Callahan v. Woods*
    658 F.2d 679, 683 (9th Cir.1981)     7

*Dang v. Cross*
    422 F.3d 800, 807 (9th Cir. 2005)     15

*DeHart v. Horn*
    227 F.3d 47, 53 (3d Cir. 2000)     10

*Freeman v. Arpaio*
    125 F.3d 732, 736 (9th Cir. 1997)     6

*Gonzales v. Woodford*
    No. C 04-5447 SI, 2005 U.S. Dist. LEXIS 6621, at *4 (N.D. Cal. Apr. 12, 2005)     11

*Graham v. C.I.R.*
    822 F.2d 844, 851 (9th Cir. 1987)     6

*Harlow v. Fitzgerald*
    457 U.S. 800, 818 (1982)     13

*Hunter v. Bryant*
    502 U.S. 224, 229 (1991)     13, 14

*Jeffers v. Gomez*
    267 F.3d 895, 910, 917 (9th Cir. 2001)     13

*Jesus Christ Prison Ministry v. Cal. Dep't of Corrs.*
    456 F. Supp. 2d 1188 (E.D. Cal. 2006)     7, 8

*Jones v. Williams*
    297 F.3d 930, 934 (9th Cir. 2002)     12

*Lee v. City of Los Angeles*
    250 F.3d 668, 688 (9th Cir. 2001)     6

*Mann v. Adams*
    855 F.2d 639, 640 (9th Cir. 1988)     11, 13

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.

*Munoz v. Tilton, et al.*
C 07-3846 JF

ii

**TABLE OF AUTHORITIES  (continued)**

*Mitchell v. Dupnik*
　　75 F.3d 517, 527 (9th Cir. 1996) ................................................ 15

*Navarro v. Block*
　　250 F.3d 729, 732 (9th Cir. 2001) .............................................. 6

*NL Indus., Inc. v. Kaplan*
　　792 F.2d 896, 898 (9th Cir. 1986) .............................................. 12

*O'Lone v. Estate of Shabazz*
　　482 U.S. 342, 349 (1987) ......................................................... 7-9

*Parks School of Bus., Inc. v. Symington*
　　51 F.3d 1480, 1484 (9th Cir. 1995) ........................................... 12

*Ramirez v. Galaza*
　　334 F.3d 850, 860 (9th Cir. 2003) .............................................. 11

*Redman v. County of San Diego*
　　942 F.2d 1435, 1446 (9th Cir. 1991) .......................................... 13

*Sanders v. Kennedy*
　　794 F.2d 478, 483 (9th Cir. 1986) .............................................. 12

*Saucier v. Katz*
　　533 U.S. 194, 205–06 (2001) .................................................... 13-15

*Shakur v. Schriro*
　　514 F.3d 878, 884-85 (9th Cir. 2008) ......................................... 7

*Taylor v. List*
　　880 F.2d 1040, 1045 (9th Cir. 1989) .......................................... 12

*Turner v. Safely*
　　482 U.S. 78, 89 (1987) ............................................................ 7-10

*Ward v. Walsh*
　　1 F.3d 873, 877 (9th Cir. 1992) ................................................. 8, 9

*Watkins v. City of Oakland*
　　145 F.3d 1087, 1093 (9th Cir. 1998) .......................................... 12

*Williams v. Morton*
　　343 F.3d 212, 218 (3d Cir. 2003) .............................................. 10

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.

*Munoz v. Tilton, et al.*
C 07-3846 JF

iii

## TABLE OF AUTHORITIES  (continued)

**Constitutional Provisions**

28 United States Constitution
    § 1915A                 5

42 United States Constitution
    § 1983              4, 6, 11, 15
    § 2000cc                5

**Court Rules**

Federal Rule of Civil Procedure
    12(b)(6)          3-6, 10, 12, 13, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.

*Munoz v. Tilton, et al.*
C 07-3846 JF

iv

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | FRANCES T. GRUNDER
Senior Assistant Attorney General
4 | JONATHAN L. WOLFF
Supervising Deputy Attorney General
5 | KYLE A. LEWIS, State Bar No. 201041
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5500
Fax: (415) 703-5843
8 | Email: Kyle.Lewis@doj.ca.gov

9 | Attorneys for Defendants James Tilton, Jeanne
Woodford, Suzan Hubbard, Anthony P. Kane, Ben
10 | Curry, W. J. Hill, B. Hedrick, and N. Grannis

11

12 | IN THE UNITED STATES DISTRICT COURT

13 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14 | SAN JOSE DIVISION

15

**ARMANDO VINCENT MUNOZ,**

C 07-3846 JF

Plaintiff,

**DEFENDANTS' NOTICE OF
MOTION AND MOTION TO
DISMISS; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT**

v.

**JAMES TILTON, et al.,**

Defendants.

21 | TO PLAINTIFF ARMANDO VINCENT MUNOZ, IN PRO SE:

22 | PLEASE TAKE NOTICE that Defendants James Tilton, Jeanne Woodford, Suzan

23 | Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill, B. Hedrick, and N. Grannis (Defendants)

24 | move this Court to dismiss Plaintiff Armando Vincent Munoz's (Plaintiff) suit under Federal

25 | Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim against

26 | Defendants for violation of Plaintiff's First Amendment right to the free exercise of religion and

27 | that Defendants are entitled to qualified immunity. Defendants also move the Court to dismiss

28 | Plaintiff's request for the award of punitive damages.

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.

*Munoz v. Tilton, et al.*
*C 07-3846 JF*

1    This motion is based upon this Notice, the Memorandum of Points and Authorities, the

2  Proposed Order, and the pleadings and records on file in this case.  In the event that the Court

3  denies this motion, in whole or in part, Defendants respectfully request that the Court grant them

4  additional time to file a motion for summary judgment.

5              **MEMORANDUM OF POINTS AND AUTHORITIES**

6                        **INTRODUCTION**

7    On or about September 25, 2006, personnel working in a mail room at the Correctional

8  Training Facility withheld a package of compact discs mailed to Plaintiff who was incarcerated

9  there.   These compact discs (CDs) were withheld from Plaintiff because they came from an

10  organization that was not on the list of approved vendors permitted to deliver materials to

11  inmates in the custody of the California Department of Corrections and Rehabilitation (CDCR)

12  under established department and facility operating procedures.  Plaintiff was informed that he

13  was not allowed to receive any CD materials, including these alleged Christian religious CDs,

14  from an unapproved vendor, but that he could receive these materials in a written format.  When

15  Plaintiff was given the opportunity to demonstrate that the practice of his faith was adversely

16  affected by CDCR's withholding of the CDs, he was unable to do so.  Citing a legitimate

17  penological interest in controlling the format in which information enters prison facilities for

18  safety and security reasons, CDCR personnel did not release the CDs to Plaintiff.

19    Plaintiff now brings suit against various CDCR officials alleging that they violated his

20  First Amendment right to the free exercise of religion by restricting his possession of religious

21  materials in prison.  However, as the following will demonstrate, Plaintiff was not denied free

22  exercise of religion and his suit fails to state a claim under which relief may be granted.

23  Furthermore, the defendant prison officials are entitled to qualified immunity and Plaintiff's

24  claim for punitive damages against them are without sufficient justification.  For these reasons,

25  the Court should dismiss Plaintiff's suit or otherwise grant Defendants' requested relief.

26  / / /

27  / / /

28  / / /

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                                    *Munoz v. Tilton, et al.*
                                                                                    C 07-3846 JF

## STATEMENT OF ISSUES

**A.    Plaintiff's First Amendment Claim Must Be Dismissed as He Fails to State a Claim Under Which Relief May Be Granted.**

The CDs at issue were withheld from Plaintiff because they did not come from an approved vendor as required by established CDCR policy. Plaintiff failed to demonstrate how withholding these CDs under that policy prevented him from engaging in conduct mandated by his faith. Furthermore, CDCR's policy to prevent introduction of materials from non-approved vendors serves a legitimate, reasonable, and constitutional penological interest in ensuring safety and security at its facilities. Should Plaintiff's suit be dismissed under Federal Rule of Civil Procedure Rule 12(b)(6) where Plaintiff failed to state a claim against Defendants for which relief can be granted?

**B.    Plaintiff Has No Constitutional Claim Arising From the Handling of His Inmate Grievance.**

Claims by prison inmates based on the denial of or failure to grant administrative appeals are not cognizable in an action for violation of civil rights because there is no constitutional right to a prison administrative appeal or grievance system. Plaintiff's sole allegation concerning certain Defendants is that they failed to take action with respect to his inmate appeals regarding receipt of the CDs at issue. In the absence of any other allegation of wrongdoing by those certain Defendants, should Plaintiff's claims against those personnel involved in the review of his administrative appeals be dismissed under Federal Rule of Civil Procedure 12(b)(6)?

**C.    Plaintiff Fails to State a Claim of Supervisor Liability.**

Liability for a violation of Plaintiff's civil rights only attaches to supervisors if they personally participated in the constitutional violation or had knowledge that their subordinates were violating another's constitutional rights and did nothing to prevent it. Apart from allegations regarding their role in promulgating CDCR policies or handling his administrative appeals, Plaintiff has provided no evidence that certain supervisory Defendants knew of any alleged constitutional violations being committed by their subordinates. Where Plaintiff failed to sufficiently plead a claim based on a theory of supervisor liability, should certain Defendants not

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.

*Munoz v. Tilton, et al.*
C 07-3846 JF

3

1  be held liable and dismissed from this case under Rule 12(b)(6) of the Federal Rules of Civil

2  Procedure?

3        **D.     Defendants Are Entitled to Qualified Immunity.**

4        Plaintiff failed to demonstrate that Defendants violated his First Amendment right to the

5  free exercise of religion by restricting his possession of religious materials in prison.

6  Additionally, documents filed by Plaintiff demonstrate that Defendants acted reasonably and

7  withheld the CDs based on legitimate penological interests.  Are Defendants entitled to qualified

8  immunity where they have not violated Plaintiff's rights and acted reasonably with respect to the

9  withholding of non-approved materials from him?

10        **E.     Plaintiff Fails to Sufficiently Plead His Claim for Punitive Damages.**

11        Plaintiff demands punitive damages for the alleged due process violations committed by

12  Defendants in their official capacity.  However, Plaintiff's complaint fails to allege that

13  Defendants acted with the requisite evil motive or callous indifference.  Should Plaintiff's claim

14  for punitive damages against Defendants in either their personal or official capacity be dismissed

15  where these damages are not sufficiently plead?

16        **STATEMENT OF THE CASE**

17        Plaintiff is a prisoner in the California Department of Corrections and Rehabilitation

18  currently incarcerated at the Correctional Training Facility (CTF), located in Soledad, California.

19  On July 26, 2007, Plaintiff filed a civil rights complaint under 42 U.S.C. § 1983 in the San

20  Francisco Division of the United States District Court for the Northern District of California.

21  (Court Docket (CD) # 1.)

22        Plaintiff alleges violations of his civil rights stemming from events that occurred on or

23  about September 26, 2006, when a package containing CDs was withheld from Plaintiff.  (CD #

24  1 at 3(b).)[1]/  The package intended for Plaintiff was delivered by Abundant Life Four Square

25  Church, and allegedly contained Christian religious CDs.  (*Id.*)  Citing penological interests in

26

27

---

28        1. When possible, citations to documents produced and filed by Plaintiff are made using the exhibit and page numbering system employed by Plaintiff.

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.         *Munoz v. Tilton, et al.*
                                                       C 07-3846 JF

1  controlling the format in which information enters the institution for safety and security reasons,

2  CDCR requires that all recordings be purchased from an authorized vendor utilizing the inmate

3  purchasing procedure. (CD # 1 at Ex. A, p. 4.)  Accordingly, under Article 43, Chapter 5, of the

4  CDCR Departmental Operations Manual (DOM), prison inmates can only receive materials from

5  sources that are listed as departmentally approved vendors.[2/]  (CD # 1 at 3(a).)  Furthermore,

6  under Operational Procedure # 26 at the Correctional Training Facility, inmates must purchase all

7  CDs from an approved vendor.  (CD # 1 at Ex. A, p. 1.)  Abundant Life Four Square Church was

8  not on the list of approved vendors, and thus the property room withheld the CDs from Plaintiff.

9  (CD # 1 at 3(b); Ex. A, p. 4.)

10      This Court subsequently screened Plaintiff's Complaint under 28 U.S.C. § 1915A, and

11  found that Plaintiff stated a cognizable claim that Defendants violated his First Amendment right

12  to the free exercise of religion by restricting his possession of religious materials in prison.  (CD

13  # 5 at 2.)[3/]  Defendants now move to dismiss Plaintiff's suit under Federal Rule of Civil

14  Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, for a

15  determination that Defendants are entitled to qualified immunity, and that Plaintiff's request for

16  punitive damages is not supported by the allegations of the Complaint.

17                                  **ARGUMENT**

18                                        **I.**

19                              **STANDARD OF REVIEW**

20      Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the

21  claims alleged in the pleadings.  A case should be dismissed under Rule 12(b)(6) if it fails to

22  state a claim upon which relief can be granted.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

23  1955, 1964-65 (2007).  A dismissal under Rule 12(b)(6) is proper where there is either a "lack of

---

25     2.  Section 54030.7.1 of Article 43 states, in part: "Personal property packages shall be ordered by inmates or third parties via a departmentally approved vendor.  A departmentally

26  approved vendor may be chosen by an inmate or third party to provide items for inclusion into a personal property package."

28     3.  The Court did not find that Plaintiff stated a cognizable claim under the Religious Land Use and Institutionalized Persons Act of 2000.  (42 U.S.C. § 2000cc.)

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                                    *Munoz v. Tilton, et al.*
                                                                                   C 07-3846 JF

1  cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

2  theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

3      When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true

4  all material allegations of the complaint and all reasonable inferences that may be drawn

5  therefrom. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To assist in its analysis, a court

6  may consider documents outside of the pleadings in support of a Rule 12(b)(6) motion to dismiss

7  if the documents are referenced in plaintiff's complaint, are "central" to plaintiff's claim, and

8  whose authenticity are not at issue. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

9  2001) (finding that courts may consider documents which are not physically attached to the

10 plaintiff's complaint if their authenticity is not contested and the complaint necessarily relies on

11 them).

12     In a § 1983 action, a plaintiff's allegations must show (1) that the conduct complained of

13 was committed by a person acting under color of state law; and (2) that the conduct deprived the

14 plaintiff of a constitutional right. *See Balistreri*, 901 F.2d at 699. Where there is no allegation of

15 facts which show the violation of a federally protected right, defendants are entitled to prevail as

16 a matter of law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).

17                                    **II.**

18      **PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE FREE**
        **EXERCISE OF RELIGION WAS NOT VIOLATED BY DEFENDANTS'**
19      **WITHHOLDING OF THE COMPACT DISCS.**

20     To establish that Defendants burdened Plaintiff's First Amendment free exercise right,

21 Plaintiff must show that he was prevented from engaging in conduct mandated by his faith

22 without any justification reasonably related to a legitimate penological interest. *See Freeman v.*

23 *Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). While inmates maintain their First Amendment rights

24 to the free exercise of their religion, those rights are necessarily limited by virtue of their

25 incarceration. *Id.* A prisoner may be inconvenienced in the practice of his faith so long as the

26 governmental conduct does not prohibit the prisoner from "participating in the mandates of his

27 religion." *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987).

28 / / /

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
                                                                    C 07-3846 JF

1   The Ninth Circuit recently recognized that two threshold requirements must be met before

2   particular beliefs, alleged to be religious in nature, are accorded First Amendment protection.

3   *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).   A court's task is to decide whether the

4   beliefs avowed are (1) "sincerely held," and (2) "rooted in religious belief." *Shakur,* 514 F.3d at

5   884 (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir.1981)).   This "sincerity test" is

6   applied to determine whether Plaintiff presents a viable claim challenging a prison regulation

7   under the Free Exercise Clause.   Nevertheless, even if it is shown that prison officials burdened

8   conduct that is mandated by Plaintiff's faith, no violation of Plaintiff's First Amendment rights

9   can be made out if the restriction imposed by the state was reasonably related to legitimate

10   penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner

11   v. Safley*, 482 U.S. 78, 89 (1987)).

12        **A.        Plaintiff's Religion Does Not Mandate that He Receive Religious CDs.**

13   Plaintiff's Free Exercise claim is not viable because his Complaint fails to sufficiently

14   allege that receiving religious CDs is necessary for him to practice sincerely held beliefs that are

15   rooted in his Christian faith. *See Shakur*, 514 F.3d at 884.   Although Plaintiff claims that denial

16   of access to the CDs places a substantial burden on his practice of core elements of his religious

17   faith, including listening to sermons, studying the Bible, and propagating and teaching others

18   about the Christianity (CD # 1 at 3(e); Ex. A, pp. 9-11), neither Plaintiff's brief conclusory

19   statement nor his scriptural citations demonstrate that he must listen to CDs as part of his

20   religiously mandated practices or that he is precluded him from practicing his faith without them.

21   At most, Plaintiff's inability to listen to religious CDs amounts to an inconvenience, not a

22   substantial interference with a his religious beliefs. *Shakur,* 514 F.3d at 884.   Such an

23   inconvenience does not rise to the level of a constitutional violation, and thus the action should

24   be dismissed.[4]

25   ─────────────────────────────────────────────

26   4. Plaintiff's Complaint asks the Court to take judicial notice of *Jesus Christ Prison Ministry
    v. Cal. Dep't of Corrs.* 456 F. Supp. 2d 1188 (E.D. Cal. 2006).   However, the decision in that case

27   was strictly limited to the Substance Abuse Treatment Facility in Corcoran, California, and the
    specific plaintiff ministry involved therein.   Furthermore, in this instant case, Defendants do not

28

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                                    *Munoz v. Tilton, et al.*
C 07-3846 JF

7

1      **B.    Even If Receiving Religious CDs is Mandated by Plaintiff's Religion,**
                 **Defendants' Failure to Allow Plaintiff's Receipt of CDs Does Not**
2                  **Amount to a First Amendment Violation.**

3      Assuming, for the sake of argument, that CDCR personnel burdened conduct that is

4 mandated by Plaintiff's faith, no violation of Plaintiff's First Amendment rights can be made out

5 if the restriction imposed by the state was reasonably related to legitimate penological objectives.

6 The Supreme Court has held that an inmate's "free exercise right, however, is necessarily limited

7 by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals

8 or to maintain prison security." *O'Lone*, 482 U.S. at 348. Accordingly, courts apply a four-part

9 test to balance the inmate's free exercise right against the state's legitimate penological interests

10 to determine whether a prison regulation is reasonable and constitutional. *Turner,* 482 U.S. at

11 89.

12      Under the *Turner* test, courts first examine whether there is a "valid, rational connection

13 between the prison regulation and the legitimate governmental interest put forward to justify it."

14 *Id.* at 89 (internal quotations omitted). Article 43 of the DOM lists a variety of requirements that

15 approved vendors must comply with, including maintenance of applicable business licenses,

16 employee criminal conviction screenings, unannounced CDCR inspections, specific packaging

17 and mailing guidelines, and other security measures. The obvious purpose of these regulations is

18 to prevent the introduction of contraband or otherwise unwanted material into prison facilities that

19 may affect the safety, security, and efficient operation of prisons. Furthermore, standardized

20 packaging regulations allow for simplified mail service at the large prison institutions, saving

21 time, space, and manpower. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1992) (Defendants had

22 "legitimate interest in running a simplified food service."). These legitimate interests are

23 rationally connected to Article 43 and OP #26, and serve as a justifiable basis to withhold CDs

24 delivered to inmates by non-approved vendors. Thus, the first *Turner* factor weighs in favor of

25 Defendants given that permitting inmates to receive packages only from approved vendors is

26

27

28 believe that the CDCR and CTF approved vendor policies impinge on Plaintiff's free exercise rights,
a threshold questions that was not discussed in *JCPN*. *Id.* at 1201.

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                   *Munoz v. Tilton, et al.*
                                                              C 07-3846 JF

1   rationally related to the legitimate penological interests in facility security and simplified mail

2   service.

3       The second factor of the *Turner* test requires courts to determine whether alternative means

4   of expressing Plaintiff's religion remain available. *Turner*, 482 U.S. at 90. Thus, where "other

5   avenues remain available for the exercise of the asserted right, courts should be particularly

6   conscious of the measure of judicial deference owed to corrections officials in gauging the validity

7   of the regulation." *Id.* (citations omitted). In this case, CTF has a chaplain, religious chapel, and

8   library. (CD # 1 at 3(d).)[5] Additionally, Plaintiff was informed that he is allowed to receive

9   religious materials in written format. (CD # 1, Ex. A at 1, 3, 4.) Furthermore, Plaintiff does not

10  allege that he is denied any other religious materials, including Bibles, publications, or prayer

11  books, nor is he prevented from practicing his religion, preaching to others, or congregating with

12  fellow inmates. In *O'Lone*, the Supreme Court concluded that the regulation at issue was

13  reasonable where the inmates were permitted to congregate for prayer freely, provided with an

14  imam who had free access to the prison, and provided with special dining arrangements. *O'Lone*,

15  482 U.S. at 352. Similarly to the plaintiffs in *O'Lone*, Plaintiff is afforded multiple alternative

16  means of practicing his religion not affect by the provision of Article 43 or OP # 26, and thus the

17  second factor weighs in Defendants' favor. *See id.*

18      Under the third *Turner* factor, courts must consider the impact of accommodation on

19  guards, other inmates, and prison resources. *Ward*, 1 F.3d at 877. Because "few changes will

20  have no ramifications on the liberty of others or on the use of the prison's limited resources . . .

21  courts should be particularly deferential to the informed discretion of corrections officials."

22  *Turner*, 482 U.S. at 90. As discussed above, allowing delivery of CDs from non-approved

23  vendors to inmates will significantly impact both prison resources and prison officials.

24  Institutional safety and efficient mail organization weigh strongly in favor of limiting deliveries

25

26      5. Interestingly, Plaintiff has chosen not to avail himself of the religious services offered at
    CTF, claiming that he does not attend the chapel at the institution due to his religious convictions
27  that the ministry does not function according to Biblical standards. (CD # 1 at Ex. A, p. 11.) By
    doing so, Plaintiff has prevented himself from hearing the word of God preached for a period of
28  time. (*Id.*)

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
                                                                    C 07-3846 JF

1  from these vendors.  In terms of impacting other inmates, providing a special class of mail that

2  can be received only for religious purposes could engender jealousy and resentment among

3  inmates of other faiths who do not have access to the same materials because their religions do not

4  have them.  Courts have found that preventing inmate jealousy is a legitimate penological

5  concern.  *See DeHart v. Horn*, 227 F.3d 47, 53 (3d Cir. 2000) (en banc).  Thus, the third *Turner*

6  factor weighs in Defendants' favor.

7       Lastly under the *Turner* test, courts must look to whether there is an absence of ready

8  alternatives which would indicate the regulation's reasonableness.  *Turner*, 482 U.S. at 90.  A

9  ready alternative is one which "fully accommodates the prisoner's rights at *de minimis* cost to

10  valid penological interests."  *Id.* at 90-91.  However, "every conceivable alternative method of

11  accommodating the claimant's constitutional complaint" need not be considered by defendant

12  prison officials.  *Id.*  As stated previously, Defendants do provide Plaintiff with a ready alternative

13  to religious CDs in the form of a functioning chapel, chaplain, chapel library, freedom of

14  association with fellow inmates, and the ability to request any religious materials in written

15  format.  (CD # 1 at Ex. A, p. 11.)  Contrary to the final *Turner* factor, allowing delivery of

16  religious CDs from non-approved vendors would come at a cost to CDCR and CTF, likely in the

17  form of increased security risks and less efficient mail handling services.  *See Williams*, 343 F.3d

18  212.  Thus, the final *Turner* factor weighs in Defendants' favor.

19       Because all four *Turner* factors weigh in Defendants' favor, Plaintiff's claim that his First

20  Amendment right to the free exercise of religion was violated fails, and this suit must be

21  dismissed.

**III.**

**DEFENDANTS HEDRICK, HILL, AND GRANNIS MUST BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BECAUSE PLAINTIFF'S CLAIMS AGAINST THEM ARISE SOLELY FROM THE HANDLING OF HIS INMATE GRIEVANCE.**

26       As stated previously, Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal

27  sufficiency of the claims alleged in the pleadings.  A dismissal under Rule 12(b)(6) is proper

28  where there is either a "lack of cognizable legal theory" or "the absence of specific facts alleged·

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
                                                                     C 07-3846 JF

1    under a cognizable legal theory." *Balistreri,* 901 F.2d at 699.

2        In a § 1983 action, a plaintiff's allegations must show (1) that the conduct complained of

3    was committed by a person acting under color of state law; and (2) that the conduct deprived the

4    plaintiff of a constitutional right. *Id.* at 699. However, inmates do not have a constitutional right

5    to submit prisoner administrative appeals or inmate grievances. *Ramirez v. Galaza,* 334 F.3d 850,

6    860 (9th Cir. 2003); *see also Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988).

7        Plaintiff alleges in his Complaint that Defendants Hedrick, Hill, and Grannis failed to take

8    action when they became aware of Plaintiff's injuries at CTF, and their omissions were substantial

9    factors in maintaining the violations of Plaintiff's right to free exercise of religion. (CD # 1 at

10   3(g).) In reality, each of these defendants were the officials who investigated or responded to

11   Plaintiff's administrative appeals regarding the withholding of the CDs. (CD # 1 at Ex. A, pp. 1,

12   3, 4.) Plaintiff does not allege any other wrongdoing by these Defendants. Although these

13   Defendants may have processed Plaintiff's inmate appeals at the various levels, that fact alone

14   cannot create a constitutional violation, much less a violation of Plaintiff's right to free exercise of

15   religion. Because Plaintiff's sole allegation concerning Defendants Hedrick, Hill, and Grannis

16   arises from their handling of his administrative appeal, Plaintiff's claims against these Defendants

17   must be dismissed for failure to state a claim upon which relief may be granted. *Ramirez,* 334

18   F.3d at 860.[6]

19                                          **IV.**

20        **PLAINTIFF HAS FAILED TO ALLEGE THAT DEFENDANTS TILTON,**
          **WOODFORD, HUBBARD, KANE, CURRY, HILL, AND GRANNIS ARE**
21        **LIABLE BASED ON THE THEORY OF SUPERVISOR LIABILITY.**

22        In § 1983 actions, the theories of respondeat superior and vicarious liability do not exist.

23   As a result, liability under a civil rights claim only attaches to supervisors if they personally

24   participated in the constitutional violation, or had knowledge that their subordinates were

25   _____

26        6. In similar instances, courts have held that "[a]ny claim based on the simple failure to grant
     administrative appeals or process them properly is not cognizable in a § 1983 action because there
27   is no constitutional right to a prison administrative appeal or grievance system for California
     inmates." *.Gonzales v. Woodford,* No. C 04-5447 SI, 2005 U.S. Dist. LEXIS 6621, at *4 (N.D. Cal.
28   Apr. 12, 2005).

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
                                                                            C 07-3846 JF

                                          11

1  violating another's constitutional rights and did nothing to prevent it. *Jones v. Williams*, 297 F.3d

2  930, 934 (9th Cir. 2002); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, to bring a

3  successful § 1983 claim against Defendants Tilton (as Secretary of CDCR), Woodford (as

4  Director of CDCR), Hubbard (as Deputy Director of Adult Corrections), Kane (as Warden of

5  CTF), Curry (as Warden of CTF), Hill (as Associate Warden of CTF), and Grannis (as Chief of

6  Inmate Appeals) (CD # 1 at 2-3), Plaintiff must allege and prove that these Defendants either

7  personally committed acts which had a direct causal connection to Plaintiff's alleged

8  constitutional violation, or that these Defendants knew of alleged constitutional violations

9  committed by their subordinates. *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986).

10  Here, however, Plaintiff failed to sufficiently allege any such wrongdoing by Defendants

11  Tilton, Woodford, Hubbard, Kane, and Curry. Rather, Plaintiff states that the acts and omissions

12  of each of these Defendants in implementing DOM Article 43 were a substantial factor in

13  violating Plaintiff's right to free exercise of religion. (CD # 1 at 3(e)-3(g).) This simple assertion

14  that supervisory personnel were involved in the promulgation of one Article in the Departmental

15  Operations Manual is an insufficient basis upon which to mount a constitutional attack.

16  Furthermore, Plaintiff failed to sufficiently allege any wrongdoing by Defendants Hill and Grannis

17  to trigger supervisor liability. Plaintiff's allegation that they failed to take action when they

18  became aware of Plaintiff's injuries is a similarly inadequate means to implicate a constitutional

19  violation on their part. (CD # 1 at 3(g).) In both instances, Plaintiff fails to make a necessary link

20  between the Defendants' alleged wrongful conduct and the constitutional violation. *See Watkins*

21  *v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (Causation may be established only by

22  showing that the supervisor set in motion a series of acts by others, which the supervisor know or

23  reasonably should have known would cause others to inflict the injury.).

24  The proper standard for a Rule 12(b)(6) dismissal requires the courts to accept as true all

25  material allegations in the complaint and construe the complaint in the light most favorable to the

26  Plaintiff. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *NL Indus.,*

27  *Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Even when Plaintiff's Complaint is viewed in

28  this manner, it fails to allege any constitutional deprivation on behalf of the Defendants. As stated

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.          *Munoz v. Tilton, et al.*
                                                          C 07-3846 JF

1  above, Plaintiff has neither alleged nor provided any evidence indicating that Defendants Tilton,

2  Woodford, Hubbard, Kane, and Curry had knowledge of any alleged constitutional violations

3  being committed by their subordinates or were causally related to those alleged violations.

4  Furthermore, as discussed above, Defendants Hill and Grannis cannot be constitutionally liable

5  for a deprivation of rights where an inmate's appeal has been denied. *Mann*, 855 F.2d at 640.

6  Because Plaintiff failed to sufficiently allege supervisor liability on the part of these Defendants,

7  they should be dismissed from this case under Rule 12(b)(6) of the Federal Rules of Civil

8  Procedure. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

9                                          **V.**

10           **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

11         Dismissal in this case is proper because Plaintiff's Complaint shows on its face that

12  Defendants are entitled to qualified immunity.  Qualified immunity shields an official from

13  liability for civil damages unless that person's conduct violated clearly established law, of which a

14  reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, it

15  gives officials "ample room for mistaken judgments by protecting all but the plainly incompetent

16  or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal

17  quotation marks and citation omitted).

18         Qualified immunity ensures that officials are on notice that their conduct is unlawful before

19  they are subjected to suit. *Saucier v. Katz*, 533 U.S. 194, 205–06 (2001).  It therefore prevents

20  officials from being distracted from their governmental duties or inhibited from taking necessary

21  discretionary action. *Harlow*, 457 U.S. at 816.  It also prevents "deterrence of able people from

22  public service," and can preserve the efficiency of government as the costs, time, and effort

23  needed for officials to defend suits can be "peculiarly disruptive of effective government,"

24  especially in light of discovery obligations. *Harlow*, 457 U.S. at 817.  In reference to prisons,

25  qualified immunity allows officials to utilize their expertise—based on years of observation and

26  practice—to maintain order without fear of liability for doing what seemed "reasonable" at the

27  time. *See Jeffers v. Gomez*, 267 F.3d 895, 910, 917 (9th Cir. 2001).  Because qualified immunity

28  is immunity from suit rather than a mere defense to liability, its application should be decided

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
                                                                     C 07-3846 JF

1  early in a case. *Hunter*, 502 U.S. at 227–28.

2      In *Saucier,* the Supreme Court established a two-step sequential test to determine whether a

3  government official is entitled to qualified immunity. First, a court must decide whether the

4  alleged facts demonstrate that a government official's conduct may have violated a constitutional

5  right. *Id.* at 201. If there was no constitutional violation, the government official is entitled to

6  qualified immunity. *Id.* If a constitutional right could have been violated, the next step is to

7  determine whether, at the time the alleged wrong was committed, the constitutional right was

8  clearly established. *Id.* at 201–02. The analysis for determining whether a right is clearly

9  established is whether a reasonable official would have understood that his or her conduct was

10  unlawful in the situation. *Id.* at 201–02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

11  (1987)).

12      As discussed above, Plaintiff has not alleged sufficient facts to support a cognizable legal

13  theory that Defendants violated his First Amendment right to the free exercise of religion by

14  restricting his possession of religious CDs in prison. Furthermore, the documents filed by

15  Plaintiff with the Court demonstrate that prison officials did not intend to restrict his access to

16  religious materials–the prison only withheld CDs being delivered to the facility from a non-

17  approved vendor in compliance with an established policy. (CD # 1 at Ex. A, pp. 1, 3, 4.) Lastly,

18  prison officials stated that Plaintiff could receive the content of the religious CDs if they were in a

19  written format. (*Id.*) These actions demonstrate the constitutionally valid conduct of CDCR

20  personnel and thus, where there is no violation of a constitutional right, Defendants are entitled to

21  qualified immunity under the threshold test of *Saucier*. 533 U.S. at 201.

22      Assuming, for the sake of argument, that Defendants violated Plaintiff's First Amendment

23  right to the free exercise of religion, Plaintiff's allegations show that Defendants acted as

24  reasonable officials in light of the circumstances. As demonstrated by Plaintiff's Complaint,

25  Defendants were enforcing an established CDCR policy with the intent of controlling the format

26  in which information entered CTF for safety and security reasons. (CD # 1 at Ex. A, p. 4.)

27  Defendants specifically stated that they were not denying Plaintiff information and materials from

28  the ministry of his choice in a written format, merely that they were withholding CDs delivered to

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.                    *Munoz v. Tilton, et al.*
C 07-3846 JF

1  him from a non-approved source.  (*Id.*)  Moreover, the state of the law at the time when

2  Defendants acted did not clearly establish that their actions would violate Plaintiff's First

3  Amendments right to the free exercise of religion.  *Saucier* requires this inquiry to "be undertaken

4  in light of the specific context of the case, not as a broad general proposition."  533 U.S. at 201.

5       Here, Defendants reasonably believed that they were properly enforcing lawful CDCR

6  policy in withholding CDs delivered to Plaintiff from a non-approved vendor while still allowing

7  him to obtain his religious materials in written format from otherwise approved vendors.  Because

8  Defendants' conduct was not clearly unlawful and was reasonable, Defendants are entitled to

9  qualified immunity.

10  **VI.**

11  **PLAINTIFF FAILS TO STATE SUFFICIENT FACTS TO SUPPORT<br>A CLAIM FOR PUNITIVE DAMAGES.**

12

13       Government officials sued in their official capacities are immune from punitive damages

14  under 42 U.S.C. § 1983.  *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  Thus, Plaintiff is

15  not entitled to punitive damages against Defendants in their official capacity.

16       A jury may, however, award punitive damages against a Defendant in his individual

17  capacity when the defendant's conduct is driven by evil motive or intent or when his actions

18  involve a reckless or callous indifference to the constitutional rights of others.  *Dang v. Cross*, 422

19  F.3d 800, 807 (9th Cir. 2005).  However, Plaintiff's complaint fails to allege that Defendants

20  acted with the requisite evil motive or callous indifference.  Therefore, Plaintiff is not entitled to

21  punitive damages against Defendants in either their personal or official capacity, and Plaintiff's

22  request for punitive damages must be dismissed.

23  / / /

24  / / /

25  / / /

26

27

28

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.          *Munoz v. Tilton, et al.*<br>C 07-3846 JF

15

1

**CONCLUSION**

2   Altogether, Plaintiff's Complaint fails to state a claim against Defendants for violating his

3 First Amendment right to the free exercise of religion by restricting his possession of religious

4 materials in prison, and should be dismissed under Federal Rules of Civil Procedure 12(b)(6).

5 Moreover, Plaintiff's Complaint fails to state a claim against Defendants Hill, Hedrick, and

6 Grannis for their alleged role in his administrative appeals.  Lastly, Defendants are entitled to

7 qualified immunity and are not subject to supervisor liability, and the allegations in the Complaint

8 are insufficient to justify a claim for punitive damages.  Based on the foregoing, Defendants

9 request that this Court grant this motion and dismiss this action.

10   Dated:  May 22, 2008

11          Respectfully submitted,

12          EDMUND G. BROWN JR.
            Attorney General of the State of California

13          DAVID S. CHANEY
            Chief Assistant Attorney General

14

15          FRANCES T. GRUNDER
            Senior Assistant Attorney General

16          JONATHAN L. WOLFF
            Supervising Deputy Attorney General

17

18

19          /S/ KYLE A. LEWIS
            KYLE A. LEWIS

20          Deputy Attorney General
            Attorneys for Defendants James Tilton, Jeanne Woodford,

21          Suzan Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill,
            B. Hedrick, and N. Grannis.

22

23

24 40255026DRAFTMUNOZ.wpd
  SF2008401051

25

26

27

28

Defs.' Not. Mot. & Mot. Dismiss; Mem. of P. & A.        *Munoz v. Tilton, et al.*
                          C 07-3846 JF

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Armando Vincent Munoz v. James Tilton, et al.**

Case No.:   **C 07-3846 JF**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 22, 2008**, I served the attached

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; [PROPOSED] ORDER**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Armando V. Munoz   (K-30296)
Correctional Training Facility-North
P.O. Box 705
Soledad, CA 93960-0705
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 22, 2008**, at San Francisco, California.

| R. Panganiban | /S/ R. Panganiban |
|---|---|
| Declarant | Signature |

40255843.wpd