Kevin T. Snider, State Bar No. 170988
*Counsel of record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: kevinsnider@pacificjustice.org

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO V. MUNOZ,<br><br>Plaintiff,<br><br>v.<br><br>JAMES TILTON (in his official capacity), JEANNE WOODFORD (in her official capacity), SUZAN HUBBARD (in her official capacity), ANTHONY P. KANE (in his official capacity), BEN CURRY (in his official capacity), W.J. HILL in his official capacity), B. HEDRICK (in her official capacity), N. GRANNIS (in her official and individual capacities), DOES 1-50,<br><br>Defendants. | Case No.: 07-3846 JF<br><br><br><br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

STATEMENT OF FACTS……………………………………………………………….2

ARGUMENT……………………………………………………………………………4

I.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS UNDER FED. R. CIV. P. 12(b)(6) BECAUSE PLAINTIFF'S COMPLAINT MEETS THE THRESHOLD REQUIREMENT FOR PLEADINGS…………………………......4

II.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S COMPLAINT BECAUSE DEFENDANTS' APPROVED-VENDOR POLICY VIOLATES PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS RELIGIOUS BELIEFS. …6

**A.**    **Defendants' approved-vendor policy is oppressive to Plaintiff's free exercise of his religious beliefs.** ………………………………………6

**B.**    **Defendants' assertions that the approved-vendor policy serves legitimate penological interests are inadequate.** …………………………9

*1.    There must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.* ..…………………………………………………………..9

*2.    Plaintiff must have available alternative means to exercise his religious beliefs.* .………………………………………………11

*3.    Courts must consider the impact of accommodation on guards, inmates and other prison resources.* ..……………………….....13

*4.    There must be an absence of ready alternatives that would indicate the regulation's reasonableness.* ..………………………...........14

**C.**    **CDCR's approved-vendor policy is unconstitutional on its face.** .….....14

III.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 BECAUSE PLAINTIFF ALLEGES SPECIFIC FACTS TO SHOW THAT DEFENDANTS VIOLATED HIS CIVIL RIGHTS. ..………...16

**A.**    **Plaintiff alleges sufficient facts to support a claim under § 1983.** …….16

**B.**    **Defendants cannot claim qualified immunity from liability for civil damages under § 1983.** .………………………………………………18

CONCLUSION……………………………………………………………………….19

# **TABLE OF AUTHORITIES**

**Federal Statutes**

Federal Civil Rights Act [42 U.S.C. § 1983]…………………………………………………5, 16-18

Religious Land Use and Institutionalized Persons Act [42 U.S.C. § 2000cc-1(a)]………......6, 8, 9

U.S. Const. amend. I……………………………………………………………………………….6

U.S. Const. amend. XIV § 1………………………………………………………………….....6


**Federal Rules**

Fed. R. Civ. P. 8………………………………………………………………………………….4-5

Fed. R. Civ. P. 12……………………………………………………………………………4-5, 17


**U.S. Supreme Court Cases**

*Bell v. Wolfish*, 441 U.S. 520 (1979)……………………………………………………………6

*Block v. Rutherford*, 486 U.S. 576 (1984)………………………………………………………10

*Conley v. Gibson*, 355 U.S. 41 (1957)………………………………………………………4, 16

*County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573 (1989)……………......8

*Cruz v. Beto*, 405 U.S. 319 (1972)………………………………………………………………6

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)………………………………………………………8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)……………………………………………………18

*Lee v. Weisman*, 505 U.S. 577 (1993)……………………………………………………………8

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)……12-13

*O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987)……………………………………………...6

*Pacific Gas & Electric Co. v. Public Util. Commn. of California*, 475 U.S. 1 (1986)…………..12

*Turner v. Safley*, 482 U.S. 78 (1989)……………………………………..............6, 9-10, 14

*U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000)…………………………………6

1

**Ninth Circuit Cases**

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008)……………………………………6, 8, 10-11

2

*Armstrong v. Davis,* 275 F.3d 849 (9th Cir.2001)………………………………………………14

3

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990)……………………………...16-17

4

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005)……………………………………………4-5

5

*Frost v. Symington*, 197 F.3d 348 (9th Cir.1999)………………………………………….9

6

*Graham v. C.I.R.*, 822 F.2d 844 (9th Cir. 1987)………………………………………….7

7

8

*Greene v. Solano County Jail*, 513 F.3d 982 (9th Cir. 2008)…………………………………8, 10

9

*Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985)…………………………6-7

10

*Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986)………………………………………..16-17

11

*Morgan v. Woessner*, 997 F.2d 1244 (9th Cir. 1993)…………………………………………4-5

12

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)……………………………………….....4, 14

13

*Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir.2001)…………………………………….........9

14

*San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004)………………..7

15

16

*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008)………………………………………….8

17

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)………………………………………...16

18

*Walker v. Sumner,* 917 F.2d 382, 386 (9th Cir.1990)…………………………………………14

19

*Ward v. Walsh*, 1 F.3d 873 (9th Cir. 1993)……………………………………………...13

20

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)………………………………….6, 10

21

22

23

**Other Federal Court of Appeals Cases**

*DeHart v. Horn*, 227 F.3d 47 (3rd Cir. 2000)…………………………………….......8

24

*Levitan v. Ashcroft*, 281 F.3d 1313, 1319 (D.C. Cir. 2002)……………………………………8

25

26

27

28

1

**Federal District Court Cases**

*Clement v. CDCR*, 220 F. Supp. 2d 1098 (N.D. Cal. 2002), affirmed, 364 F.3d 1148 (9th Cir. 2004)…………………………………………………………………………………….10-11, 14

*Jesus Christ Prison Ministries v. California Dept. of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006)……………………………………………….........................5-6, 9-15, 18-19

*Raidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090 (S.D. Cal. 2006)…………………4

**State Court Cases**

*Wright v. California*, 122 Cal. App. 4th 659 (Cal. App. 3 Dist. 2004)…………………….....15-16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STATEMENT OF FACTS

2

Plaintiff Armando V. Munoz (hereinafter "Plaintiff") became an inmate in the custody of

3

the California Department of Corrections and Rehabilitation (hereinafter "CDCR") is currently

4

housed at Correctional Training Facility (hereinafter "CTF") in Soledad, California.  Pl.'s Compl.

5

p. 3(b)[1] (June 22, 2007).  Since his incarceration in CDCR's prison system in 1996, Plaintiff has

6

embraced the Christian faith.  *Id.* at 3.  To deepen his relationship with God while incarcerated,

7

Mr. Munoz has sought and obtained cassette tapes and compact discs (hereinafter "CDs")

8

containing sermons and worship music from a variety of Christian ministries.  *Id.*

9

In March 2005, CDCR handed down a policy concerning inmate property that was to be

10

implemented statewide.  Pl.'s Compl. 3(a).  The policy permits inmates at CDCR facilities to keep

11

religious items in their cells subject to the approval of designated custody staff and the

12

institutional chaplain.  CDCR Operations Manual § 54030.10.9.[2].  However, any religious item an

13

inmate wishes to have must be obtained through a facility-approved vendor.  *Id.*  The policy was

14

implemented at CTF in June 2006.  Pl.'s Compl. 3(b).

15

On September 25, 2006, Plaintiff attempted to pick up Christian CDs from the property

16

room at CTF's North Facility.  Pl.'s Compl. 3(b).  The CDs were from Abundant Life Foursquare

17

Church (hereinafter "Abundant Life").  *Id.*  The property room's attendant refused to give Plaintiff

18

the CDs, stating that Plaintiff could not receive religious materials from any Christian ministries

19

because none were on the approved vendors list.  *Id.*  Still, the attendant agreed to hold on to the

20

CDs pending an administrative appeal.  *Id.*

21

22

_____

23

[1] To avoid confusion, all citations to Plaintiff's complaint refer to page numbers unless otherwise

24

expressly noted in the text.

25

[2] .  CDCR Operations Manual § 54030.10.9 reads in relevant part: "Inmates may possess

26

authorized religious items consistent within the six cubic feet limitation.  Religious items are

27

subject to approval by designated custody staff and the institutional chaplain."

28

Plaintiff availed himself of CDCR's appeals process. Pl.'s Compl. 3(b)-(e). At each stage of the process, Plaintiff was denied access to his CDs because the CDs were not obtained through an approved vendor. *Id.* More than one CDCR official told Plaintiff that Plaintiff could obtain written transcripts of the worship services on the CDs if Abundant Life was willing to provide such transcripts, but not the CDs themselves. *Id.* at 3(c)-(d). Plaintiff was denied his CDs despite asserting that 1) at least one inmate was receiving Buddhist CDs from an outside source, and 2) inmates may receive educational CDs from outside sources. *Id.* at 3(c).

Plaintiff was told he could speak to CTF's Protestant chaplain about donating the CDs to the prison chapel so Plaintiff and other inmates could check them out through the chapel library. Pl.'s Compl. 3(c)-(d). When Plaintiff attempted to do so, the chaplain informed Plaintiff that the chapel could not accept the CDs because "there was not enough room to accommodate access to every inmate's religious ministry resources." Pl.'s Compl. 3(d).

Without access to the CDs he desires, Plaintiff cannot listen to Christian sermons or worship music. Pl.'s Compl. 3(e). Plaintiff does not attend religious services at CTF's chapel because he strongly believes that the prison's ministry does not operate according to biblical standards. Memo. of Law in Support of Admin. App. 4 (Jan. 5, 2007) (hereinafter "Memo. of Law"). Without the religious materials he seeks, Plaintiff's spiritual needs will go unmet. *Id.* at 2 ["The Bible requires that its followers hear the word of God"]. Plaintiff thus contends that CDCR's approved-vendor policy substantially burdens his ability to freely exercise his Christian faith. *Id.* at 3(e).

CDCR insists that it has a penological interest "in controlling the format in which information enters its institution for safety and security reasons." Pl.'s Compl. 3(d). However, CDCR does not state any basis for such concerns, simply stating that the approved-vendor policy "serve(s) as a justifiable basis to withhold CDs delivered by inmates to non-approved vendors." Def.'s Memo. of Points and Auths. in Support of Mot. Dismiss 8 (May 22, 2008) (hereinafter Def.'s Mot. Dismiss). Plaintiff contends that CDCR's blanket, unsubstantiated assertions of an

1   interest in safety and security are not sufficient to override Plaintiff's complaint, particularly at the

2   motion-to-dismiss stage. Pl.'s Compl. 3(e).

3          Having exhausted his administrative remedies within CDCR, Plaintiff brought suit against

4   seven individual CDCR employees (hereinafter collectively "Defendants") for violating his rights

5   under the U.S. Constitution's First and Fourteenth Amendments and the Religious Land Use and

6   Institutionalized Persons Act (hereinafter "RLUIPA"). Pl.'s Compl. 3(e)-3(h). Plaintiff initially

7   filed his case pro se.[3] In response, Defendants drafted a motion to dismiss for failure to state a

8   claim under Fed. R. Civ. P. 12(b)(6). Def.'s Mot. Dismiss 2. Because Plaintiff does in fact state

9   claims for violations of his rights under the Constitution and RLUIPA, Plaintiff asks this Court to

10  deny Defendants' motion to dismiss. Memo. of Law 1.

11

12                                      **ARGUMENT**

13  I.      THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS UNDER FED.
            R. CIV. P. 12(b)(6) BECAUSE PLAINTIFF'S COMPLAINT MEETS THE
14          THRESHOLD REQUIREMENT FOR PLEADINGS.

15          A plaintiff's pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e).

16  "(C)ourt(s) must construe *pro se* pleadings liberally and afford plaintiff the benefit of any doubt."

17  *Raidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006). If a *pro se*

18  plaintiff alleges, "with at least some degree of particularity, overt acts taken by each defendant

19  which support his claims," the court should not dismiss the plaintiff's complaint. *Id.*

20          In determining whether to dismiss a plaintiff's complaint under Fed. R. Civ. P. 12(b)(6),

21  "all material allegations of the complaint are accepted as true, as well as all reasonable inferences

22  to be drawn from them." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The claim should

23  only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support

24  of his claim which would entitle him to relief." *Id.* [quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

25  (1957)].

26  _____

27  [3] Substitution of Attorney was filed with this court on June 23, 2008.

28  _____

1    "A 'jury may award punitive damages under section 1983 either when a defendant's

2    conduct … involved a reckless or callous indifference to the constitutional rights of others.'"

3    *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) [quoting *Morgan v. Woessner*, 997 F.2d 1244,

4    1255 (9th Cir. 1993)].  It is such "reckless or callous indifference" that Plaintiff, who initially filed

5    his complaint *pro se*, alleges with regard to his claim that Defendants violated his civil rights.

6    Pl.'s Compl. 3(e)-3(h) [stating that Defendants' "acts and omissions in implementing (the

7    approved-vendor policy) were a substantial factor in violating Plaintiff's right to be free to

8    exercise his religion guaranteed by the First Amendment … and (RLUIPA)"].

9        In his statement of his claim, Plaintiff specifies with particularity the parts each Defendant,

10   in denying Plaintiff access to his religious CDs, played in depriving him of his right to freely

11   exercise his Christian beliefs.  Pl.'s Compl. 3(a)-3(e).  Plaintiff describes how Defendants would

12   not budge in their enforcement of the approved-vendor policy despite the burden it placed on

13   Plaintiff's right of free religious exercise.  *Id.*  Plaintiff also describes how Defendants suggested

14   alternatives that were wholly inadequate to meet Plaintiff's spiritual needs rather than attempting

15   to rectify the infringement on Plaintiff's constitutional rights.  *Id.*

16       Such statements are more than adequate to meet the requirements of FRCP 8(a)(2) ["(A)

17   short and plain statement of the claim showing that the pleader is entitled to relief" is all that is

18   required] and Fed. R. Civ. P. 8(d)(1) ["Each allegation must be simple, concise, and direct.  No

19   technical form is required"].  This Court should thus not dismiss Plaintiff's complaint for failure to

20   state a claim.

21       Before delving into the constitutional principles and abundance of decisional authorities

22   supporting Plaintiff's complaint, it should be noted that nearly identical issues were successfully

23   litigated by Plaintiff's counsel — against CDCR and the state prison in Corcoran — in *Jesus*

24   *Christ Prison Ministries v. California Dept. of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006)

25   (hereinafter *JCPM*).  Judge Drozd of the Eastern District carefully weighed and rejected the claims

26   now being presented by CDCR to this Court.  In light of that history, it is specious at best for

27   Defendants to claim that Plaintiff can prove no set of facts entitling him to relief.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S COMPLAINT
       BECAUSE DEFENDANTS' APPROVED-VENDOR POLICY VIOLATES
       PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS RELIGIOUS BELIEFS.

A state regulation that denies a prison inmate a reasonable opportunity to exercise his

religious faith that is comparable to opportunities other inmates receive violates the inmate's

constitutionally protected religious rights.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Prison inmates do not automatically forfeit their religious rights upon incarceration.

*JCPM*, 456 F. Supp. 2d at 1199 [citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)].  Inmates' rights

to freely practice their religious beliefs are "necessarily limited by the fact of incarceration." *Id.* at

1200 [quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)].  However, the First

Amendment prohibits prisons from implementing or enforcing regulations that would prevent an

inmate from exercising his religious beliefs entirely.  *Id.* at 1200 n. 5 [citing U.S. Const. amend. I].

Under RLUIPA, any prison policy that substantially burdens an inmate's religious practices must

1) further a compelling governmental interest, and 2) be the least restrictive means of doing so.

*Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2008) [quoting *Warsoldier v. Woodford*, 418 F.3d

989, 994 (9th Cir. 2005), quoting 42 U.S.C. § 2000cc-1(a)].  The Fourteenth Amendment requires

that inmates not be denied equal protection under the law.  U.S. Const. amend. XIV § 1.

When a plausible, less restrictive alternative to infringing on constitutional and statutory

rights exists, the government bears the burden of proving that said alternative would not

effectively achieve the government's goals.  *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S.

803, 816-17 (2000).  Since Plaintiff "can point to an alternative that fully accommodates the

prisoner's rights at *de minimis* cost to valid penological interests" in this case, this Court should

not dismiss Plaintiff's complaint.  *Turner v. Safley*, 482 U.S. 78, 91 (1989).

A.    Defendants' approved-vendor policy is oppressive to Plaintiff's free
      exercise of his religious beliefs.

"The (First Amendment's) free exercise clause recognizes the right of every person to

choose among types of religious training and observance, free of state compulsion." *Grove v.*

1    *Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985).  "To establish a violation of that

2    clause, a litigant must show that challenged state action has a coercive effect that operates against

3    the litigant's practice of his or her religion."  *Id.*  "(F)or a (prison) regulation to impose a

4    substantial burden [under RLUIPA], it must be oppressive to a 'significantly great' extent."  *San*

5    *Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

6         Defendants argue that "a prisoner may be inconvenienced in the practice of his faith so

7    long as the governmental conduct does not prohibit the prisoner from 'participating in the

8    mandates of his religion.'"  Def.'s Mot. Dismiss 6 [quoting *Graham v. C.I.R.*, 822 F.2d 844, 851

9    (9th Cir. 1987)].[4]  However, the approved-vendor policy does more than inconvenience Plaintiff.

10   The policy is oppressive to Plaintiff because it prevents him from practicing his belief that he must

11   hear a variety of ministers' perspectives on the Bible to deepen his understanding of God's word.

12   Memo. of Law 2.

13        The approved-vendor policy is oppressive, first and foremost, because there are no

14   Christian ministries on CDCR's list of approved vendors.  State of California, Memo. re:

15   Approved Inmate Property Package Vendor List, Attachment 1 (hereinafter Approved Vendor

16   List).  Plaintiff has no choice but to go through unapproved charities if he wishes to obtain CDs

17   containing sermons and worship music that will satisfy his spiritual needs.  Pl.'s Compl. 3(b).

18        In addition, Plaintiff "does not attend the Chapel at (CTF) due to his religious convictions

19   that the ministry does not function according to Biblical standards."  Memo. of Law 4.

20   Defendants argue that by choosing "not to avail himself of the religious services offered at CTF …

21   Plaintiff has prevented himself from hearing the word of God preached for a period of time."

22   Def.'s Mot. Dismiss 9 n. 5.  However, because CTF's ministry does not function according to

23   Biblical standards, in Plaintiff's view, Plaintiff "has not heard the word of God preached for some

24   time now."  Memo. of Law 4.  Moreover, Plaintiff believes that "a true follower of God is not to

25

26   [4] Instead of citing to one of the significant number of cases involving prisoners' rights under

27   RLUIPA, Defendants cite to a case that predates the federal statute's passage in 2000.

28

1  follow the teaching of any one man." *Id.* at 2. The approved-vendor policy thus has a coercive

2  effect on Plaintiff because Plaintiff is forced to choose between attending a service that does not

3  meet his religious needs and foregoing any form of spiritual fulfillment. "Laws that coerce

4  nonadherents to 'support or participate in any religion or its exercise' … virtually by definition

5  violate their right to religious free exercise." *Lee v. Weisman*, 505 U.S. 577, 621 (1993) (Souter,

6  J., concurring) [quoting *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573,

7  659 (1989)].

8      Defendants contend that "neither Plaintiff's brief conclusory statement nor his scriptural

9  citations demonstrate that he must listen to CDs as part of his religiously mandated practices or

10  that he is precluded from practicing his faith without them." Def.'s Mot. Dismiss 7. However,

11  Plaintiff's complaint cannot be dismissed on this basis: "RLUIPA … defines 'religious exercise'

12  to include 'any exercise of religion, *whether or not compelled by*, or central to, a system of

13  religious belief.'" *Alvarez*, 518 F.3d at 1156 (emphasis included) [quoting 42 U.S.C. § 2000cc-

14  5(7)(A)]. "In fact, RLUIPA 'bars inquiry into whether a particular belief or practice is 'central' to

15  a prisoner's religion.'" *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008) [quoting

16  *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005)].

17      In addition, "(a) requirement that a religious practice be mandatory to warrant First

18  Amendment protection finds no support in the cases of the Supreme Court or of (the Ninth

19  Circuit)." *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) [quoting *Levitan v. Ashcroft*, 281

20  F.3d 1313, 1319 (D.C. Cir. 2002)]. The issue of whether Plaintiff's religion requires him to listen

21  to religious CDs is thus irrelevant. *Id.* What matters is whether Defendants substantially

22  burdened Plaintiff's freedom to exercising his religious beliefs by denying him access to the CDs

23  he ordered from Abundant Life. *Id.*

24      "[B]eliefs which are both sincerely held and religious in nature are entitled to

25  constitutional protection." *Shakur*, 514 F.3d at 885 [quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3rd

26  Cir. 2000)]. Plaintiff sincerely subscribes to Biblical principles, as indicated by his refusal to

27  attend religious services that do not preach them. Memo. of Law 4. Plaintiff's beliefs are also

28

1   religious in nature, as indicated by the multiple scriptural references he provided in his complaint

2   to show the basis for his beliefs.  *Id.* at 2-4.

3       Plaintiff's complaint specifically alleges that by denying him access to his religious CDs,

4   Defendants violated his right to freely exercise his Christian faith under the Constitution and

5   RLUIPA.  Pl.'s Compl. 3(e).  This Court should thus not dismiss Plaintiff's complaint for failure

6   to state a claim.  *Id.*

7

8   **B.    Defendants' assertions that the approved-vendor policy serves
        legitimate penological interests are inadequate.**

9       Under *Turner v. Safley*, 482 U.S. at 89-91, federal courts must apply a four-factor test to

10  determine whether a prison regulation affecting an inmate's religious rights can withstand

11  constitutional scrutiny.  First, the regulation must have a "valid, rational connection" to the

12  legitimate governmental interest put forward to justify it.  *Id.* at 89 [quoting *Block v. Rutherford*,

13  486 U.S. 576, 586 (1984)].  Second, the inmate must have available alternative means to exercise

14  their religious beliefs.  *Id.* at 90.  Third, any burden on guards, other inmates, and the allocation of

15  prison resources that the regulation is intended to relieve must greatly outweigh the need to

16  accommodate the inmate's religious rights.  *Id.*  Finally, there must be no other alternative to

17  infringing on the inmate's religious rights.  *Id.* at 91.  Here, each factor will be addressed in turn.

18          *1.    There must be a "valid, rational connection" between the prison
             regulation and the legitimate governmental interest put forward to
             justify it.*

19

20      When "there is no commonsense connection between a (state regulation's) legitimate

21  (penological) objective" and infringement on prison inmates' religious rights, the regulation

22  cannot pass muster under the Constitution or RLUIPA.  *JCPM*, 456 F. Supp. 2d at 1201 [citing

23  *Prison Legal News v. Cook*, 238 F.3d 1145, 1150 (9th Cir. 2001), and *Frost v. Symington*, 197

24  F.3d 348, 357 (9th Cir.1999)].

25      Defendants assert that the "introduction of contraband or otherwise unwanted material into

26  prison facilities … may affect the safety, security and efficient operation of prisons."  Def.'s Mot.

27

28

1   Dismiss 8.  Defendants also contend that CDCR's approved-vendor policy "allow[s] for simplified

2   mail services at the large prison institutions, saving time, space and manpower."  *Id.*

3       Those concerns, while having some validity, do not justify the burden Defendants have

4   placed on Plaintiff's free exercise of his religious beliefs: "[N]o longer can prison officials justify

5   restrictions on religious exercise by simply citing to the need to maintain order and security in a

6   prison."  *Alvarez*, 518 F.3d at 1156 [quoting *Greene*, 513 F.3d at 989].  Prisons "now must

7   demonstrate that they 'actually considered and rejected the efficacy of less restrictive measures

8   before adopting the challenged practice.'"  *Id.* at 1156-57 [quoting *Warsoldier*, 418 F.3d at 999].

9       Defendants make no such demonstration; they simply state that the approved-vendor

10  policy "serve[s] as a justifiable basis to withhold CDs delivered by inmates to non-approved

11  vendors."  Def.'s Mot. Dismiss 8.  As the U.S. District Court for the Eastern District of California

12  (hereinafter "the Eastern District") stated in *JCPM*, 456 F. Supp. 2d at 1201:

13

14          (D)efendants do not contend that ... religious literature, audio tapes and compact
            discs in and of themselves raise any security concern.  …  Nor do defendants argue

15          that the penological goals of preventing receipt of contraband, reducing fire
            hazards, increasing efficiency of random cell inspections or enhancing prison

16          security justify the policy.  Presumably defendants do not advance these
            justifications because the Ninth Circuit has rejected such assertions in similar cases

17          involving (mail sent to prison facilities).

18  The defendants in *JCPM* had no evidence of legitimate penological concerns "most likely

19  due to the fact that plaintiff JCPM is undisputedly a legitimate religious organization and that no

20  such safety or security concerns exist with respect to the materials it is attempting to send to the

21  prisoner plaintiffs."  *Id.* at 1201 n. 6.  The same can be said of Abundant Life and the CDs

22  Plaintiff attempted to obtain in this case.  Pl.'s Compl. 3.

23      As for efficient mail service, any additional burden of distributing religious materials from

24  non-approved vendors is not great.  *Clement v. CDCR*, 220 F. Supp. 2d 1098, 1112 (N.D. Cal.

25  2002), *aff'd*, 364 F.3d 1148 (9th Cir. 2004) ["Whatever impact increased mail volume may have on

26  prison resources cannot justify (a prison's) ban on materials generated from (non-approved

27  vendors)"].  Plaintiff "is not asking for some extraordinary thing.  Only that he may receive

28  religious materials on tape or CD from legitimate religious ministries."  Memo. of Law 4.  Such

1  materials can be distributed to inmates in the same manner that educational materials from

2  correspondence courses are distributed to inmates taking those courses. *Id.* at 5. As the Eastern

3  District stated in *JCPM*, 456 F. Supp. 2d at 1201, "No evidence before the court even suggests that

4  the distinction between an approved vendor and an unapproved vendor … is a meaningful one. …

5  [D]efendants have failed to establish that their distinguishing between approved vendors and

6  unapproved vendors is anything but arbitrary." The first *Turner* factor thus does not weigh in

7  favor of Defendants, as Defendants contend. Def.'s Mot. Dismiss 8.

8
          2.    *Plaintiff must have available alternative means to exercise his*
9                *religious beliefs.*

10        Defendants assert that CTF has a chaplain, a religious chapel, and a library, and that these

11  should be sufficient to meet Plaintiff's religious needs. Def.'s Mot. Dismiss 9. Such services'

12  availability, however, means little to a Christian inmate who strongly feels that the services do not

13  satisfy his hunger for Biblical knowledge. Memo. of Law 3-4. Plaintiff, like other inmates, is

14  entitled to have personal property for his exclusive use, including religious items not specified in

15  CDCR's Departmental Operations Manual. CDCR Operations Manual § 54030.10.9. The

16  services available at CTF are thus an unsuitable alternative means for Plaintiff to exercise his

17  Christian faith. Memo. of Law 3-4.

18        Defendants offered to permit Plaintiff to obtain transcribed versions of the materials he

19  sought on CD. Memo. of Law 3. However, one California case rejected that very alternative as

20  both impractical and inadequate. See *Clement*, 220 F. Supp. 2d at 1112. There is also no

21  guarantee that Plaintiff would even be able to obtain such a transcript. Pl.'s Compl. 3(c)

22  ["Plaintiff (was advised) that he could receive a transcribed version of the worship services on CD

23  *if the ministry was willing* to transcribe them" (emphasis added)]. Aside from the extra effort

24  required to transcribe spoken words on a CD into a written format, praise and worship music and

25  even prayers do not translate well into a written format. Memo. of Law 3. With a written

26  transcript of a church service, Plaintiff can neither hear a preacher's powerfully spoken points of

27  emphasis nor be spiritually uplifted by songs sung in praise of God's name. *Id.*

28

1    Plaintiff was also told he could possibly obtain access to his CDs by donating them to

2  CTF's prison chapel and then checking them out through the chapel library.  Pl.'s Compl. 3(c)-(d).

3  CTF's chaplain refused to accept the donation, thus denying Plaintiff a potential alternative means

4  to exercise his religious faith.  *Id.* at 3(d).  Regardless:

5       "(T)he possibility that a prisoner may be able to borrow a copy of an audio cassette
        or compact disc from a chaplain for a short period of time[,] subject to the demands
6       of others who may desire the same recording, is not an adequate replacement for
        possessing it indefinitely and having access to it when desired."
7

8       *JCPM*, 456 F. Supp. 2d at 1202.

9    The burden Plaintiff would suffer by having to donate CDs he attempted to obtain for his

10  exclusive personal use in exercising his Christian beliefs would be more than "a mere

11  inconvenience."  *Id.* at 1205.  "Being denied access to these religious materials compels inaction

12  with respect to studying the Bible, listening to sermons and Christian music and propagating and

13  teaching others about the Christian faith, all of which … [are] core elements of plaintiffs'

14  Christian faith."  *Id.*  Plaintiff lists those very core elements as the reasons he seeks access to his

15  CDs.  Pl.'s Compl. 3(e).

16    Defendants also fail to acknowledge that the First Amendment gives Plaintiff the right to

17  receive information.  *Pacific Gas & Electric Co. v. Public Util. Commn. of California*, 475 U.S. 1,

18  8 (1986).  Plaintiff desires to hear the word of God preached by a variety of ministers.  Memo. of

19  Law 2 ["(S)ermons/teachings on tape or CD from ministries (help inmates) to have the Word God

20  has spoken to our hearts confirmed"].  By denying Plaintiff the chance to hear the contents of his

21  CDs and telling him that taking advantage of CTF's religious services is the only way he can hear

22  the word of God, Defendants are blocking Plaintiff's access to information in violation of his First

23  Amendment rights.  *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S.

24  789, 804 (1984) ["The First Amendment forbids the government to regulate speech in ways that

25  favor some viewpoints or ideas at the expense of others"].

26    The content of the CDs Plaintiff seeks access to is unique speech.  Memo. of Law 2.  The

27  requirement of having a prisoner obtain a transcript from the producer of the CDs renders access

28

1   to the religious teachings and songs on the CDs impracticable. *Id.* at 3-4. As was the case in

2   *JCPM*, the "unique study and worship materials" to which Plaintiff seeks access are unavailable

3   through any of CDCR's approved vendors. *JCPM*, 456 F. Supp. 2d at 1205; Pl.'s Compl. 3(b).

4   Without exclusive access to the CDs that Abundant Life sent him, Plaintiff is "unable to engage in

5   conduct that is motivated by (his) sincere religious beliefs and is important to (him)." *JCPM*, 456

6   F. Supp. 2d at 1204. Because Defendants' suggested alternative means is unsuitable, inadequate

7   to serve Plaintiff's needs and violative of the First Amendment, the second *Turner* factor is not

8   met, as Defendants suggest. Def.'s Mot. Dismiss 9.

9

10              3.      *Courts must consider the impact of accommodation on guards,*
                        *inmates and other prison resources.*

11          Though courts must give deference to prison officials' assessment of the burden on their

12  facilities' operations, courts cannot simply accept the officials' assertion that the burden would be

13  significant. *Ward v. Walsh*, 1 F.3d 873, 878-79 (9th Cir. 1993).

14          Defendant argues that "in terms of impacting other inmates, providing a special class of

15  mail that can be received only for religious purposes could engender jealousy and resentment

16  among inmates of other faiths who do not have access to the same materials." Def.'s Mot.

17  Dismiss 10. To the contrary, courts have noted that the prospect of disruption due to perceptively

18  favorable treatment of an inmate "is present in every case that requires special accommodations

19  for adherents to particular religious practices. While not irrelevant, it is not in itself dispositive."

20  *Ward*, 1 F.3d at 878.

21          Defendants' favorable-treatment argument might carry more weight in this case if Plaintiff

22  had not alleged that a Buddhist inmate "was already receiving religious materials, i.e., CDs from

23  an outside source." Pl.'s Compl. 3(c). Plaintiff further alleges that inmates can receive CDs from

24  outside sources to accommodate their educational needs. *Id.* Defendant does not refute these

25  allegations but does acknowledge that "the court must accept as true all material allegations of the

26  complaint and all reasonable inferences that may be drawn therefrom." Def.'s Mot. Dismiss 6

27  [citing *Navarro*, 250 F.3d at 732]. "A regulation cannot be sustained where the logical connection

28  between the regulation and the asserted goal has not been demonstrated, and the legitimacy and

neutrality of the governmental objective has not been shown." *JCPM*, 456 F. Supp. 2d at 1201 [quoting *Turner*, 482 U.S. at 89-90]. The third *Turner* factor thus does not weigh in Defendants' favor despite Defendants' contentions. Def.'s Mot. Dismiss 10.

> 4. *There must be an absence of ready alternatives that would indicate the regulation's reasonableness.*

As stated *supra*, "[Plaintiff] is not asking for some extraordinary thing. Only that he may receive religious materials on tape or CD from legitimate religious ministries." Memo. of Law 4. Any additional burden on prison security and mail services would be minimal. *Clement*, 220 F. Supp. 2d at 1112. A ready alternative to the prison's approved-vendor policy would be for Plaintiff and all other inmates who seek full, exclusive and immediate access to religious materials from non-approved vendors to be granted such access, which is the chief form of relief that Plaintiff seeks. Pl.'s Compl. 3, 3(h)-(i). The fourth *Turner* factor thus does not favor Defendants as they suggest. Def.'s Mot. Dismiss 10.

**C.    CDCR's approved-vendor policy is unconstitutional on its face.**

Courts cannot presume that prison policies which infringe on inmates' constitutionally and statutorily protected rights validly serve legitimate penological interests. *Clement*, 220 F. Supp. 2d at 1105. "[C]onsiderations advanced to support a restrictive policy [are subject to] meaningful review." *Id.* [quoting *Armstrong v. Davis,* 275 F.3d 849, 874 (9th Cir.2001), quoting *Walker v. Sumner,* 917 F.2d 382, 386 (9th Cir.1990)]. "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

In this case, Defendants assert that "[i]nstitutional safety and efficient mail organization weigh strongly in favor of limiting deliveries from non-approved vendors." Def.'s Mot. Dismiss 9-10. However, Plaintiff has no choice but to go through outside vendors to obtain religious materials because there are no organizations that provide such materials on the approved-vendor list. See Approved Vendor List. As in *JCPM*, "[D]efendants appear to contend that religious literature, audio tapes and compact discs from unapproved vendors create some unspecified

1   concern simply because they are from unapproved vendors."  Def.'s Mot. Dismiss 9; *JCPM*, 456

2   F. Supp. 2d at 1201.

3        Furthermore, Defendants contend that Plaintiff's efforts to obtain his CDs would require

4   CTF to "provid[e] a special class of mail that can be received only for religious purposes."  Def.'s

5   Mot. Dismiss 10.  Plaintiff makes no such demand; he merely seeks for himself and other CDCR

6   inmates to be able to obtain religious material through the mail from legitimate religious

7   ministries, churches, and other organizations.  Pl.'s Compl. 3(h)-(i).

8        Defendants go so far as to suggest that "inmates do not have a constitutional right to

9   submit prisoner administrative appeals or inmate grievances."  Def.'s Mot. Dismiss 11.  However,

10  both California and federal law *require* that inmates exhaust administrative remedies within their

11  prison systems before seeking judicial relief.  *Wright v. California*, 122 Cal. App. 4th 659, 664

12  (Cal. App. 3 Dist. 2004).  Plaintiff went as far as he could go in CDCR's administrative appeals

13  process, and his grievances were not redressed.  Pl.'s Compl. 3(c)-3(e).

14       As in *JCPM*, "[D]efendants have failed to establish that their distinguishing between

15  approved vendors and unapproved vendors is anything but arbitrary."  *JCPM*, 456 F. Supp. 2d at

16  1201.  Plaintiff is challenging CDCR's approved-vendor policy, and CTF's application of it,

17  because of the policy's arbitrary nature.  Pl.'s Comp. 3(h) [asking this Court to declare the

18  approved-vendor policy "illegal, unconstitutional and or (sic) otherwise unenforceable in regards

19  to the receipt of religious materials on cassette tape or Compact Discs pursuant to RLUIPA and …

20  the First Amendment …"].  Since Plaintiff has met the requirement that he exhaust administrative

21  remedies before seeking judicial relief, this Court should not dismiss Plaintiff's complaint.

22  *Wright*, 122 Cal. App. 4th at 664-65.

23

24       III.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS UNDER 42
                 U.S.C. § 1983 BECAUSE PLAINTIFF ALLEGES SPECIFIC FACTS TO
25               SHOW THAT DEFENDANTS VIOLATED HIS CIVIL RIGHTS.
            "To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained
26
27  of was committed by a person acting under color of state law; and (2) that the conduct deprived

28

1  the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th

2  Cir. 1990).  As stated *supra*, "(a) complaint should not be dismissed under (Fed. R. Civ. P.)

3  12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

4  his claim which would entitle him to relief.'" *Id.* [quoting *Conley*, 355 U.S. at 45-46].

5        A.    **Plaintiff alleges sufficient facts to support a claim under § 1983.**

6        A supervisor can be liable under § 1983 "for constitutional violations of his subordinates if

7  the supervisor participated in or directed the violations, or knew of the violations and failed to act

8  to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "(A government and) its

9  administrators or supervisors can [also] be liable if the alleged constitutional violation is …

10  sanctioned by an official policy or custom." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

11       In his complaint, Plaintiff asserts that the "officials who investigated or responded to

12  Plaintiff's administrative appeals regarding the withholding of the CDs" violated his

13  constitutionally and statutorily protected religious rights by failing to grant his appeals.  Def.'s

14  Mot. Dismiss 11.  The three Defendants in this case who handled those appeals are B. Hedrick,

15  W.J. Hill and N. Grannis.  Pl.'s Compl. 3(g).  It was Hedrick, a CTF employee, who initially

16  interviewed Plaintiff as part of "the First Formal Level" of review regarding Plaintiff's complaints.

17  *Id.* at 3(c).  It was also Hedrick who told Plaintiff that Plaintiff could either "receive a transcribed

18  version of worship services on CD [or] donate the CD's (sic) to the chapel (and) check them out

19  through the chapel library." *Id.*  Hill, CTF's Associate Warden, denied Plaintiff's appeal at

20  "Second Level Review" based on CDCR's approved-vendor policy.  *Id.* at 3(d).  N. Grannis

21  ultimately denied Plaintiff's appeals while employed as the Chief of Inmate Appeals for CDCR,

22  also based on CDCR's approved-vendor policy.  *Id.* at 2(a)-3, 3(e).

23       As employees of CDCR or CTF, Hedrick, Hill, and Grannis were "persons acting under

24  color of state law," as were the other Defendants in this case.  Pl.'s Compl. 2(a)-3.  Plaintiff

25  alleges that in denying the administrative appeals in which he sought to gain access to his CDs,

26  Hedrick, Hill, and Grannis violated Plaintiff's constitutionally and statutorily protected religious

27  rights.  *Id.* at 3(g)-3(h).  Plaintiff can prove that by "fail(ing) to take action when they became

28

1    aware of Plaintiff's injuries at CTF," Hedrick, Hill and Grannis played roles in "maintaining the

2    violations of Plaintiff's rights to be free to exercise his religion." *Id.* at 3(g). This Court should

3    thus not dismiss Plaintiff's claim. *Balistreri*, 901 F.2d at 699.

4        Defendant contends that Plaintiff failed to allege that Grannis and the other Defendants in

5    this case besides Hedrick cannot be held responsible based on a theory of supervisor liability

6    under § 1983. Def.'s Mot. Dismiss 11. However, in this case Plaintiff is challenging the

7    approved-vendor policy that has been officially sanctioned by CDCR and implemented at CTF.

8    Pl.'s Comp. 3(h). Prison administrators or supervisors can be liable for alleged constitutional

9    violations that are "sanctioned by an official policy or custom." *Jones*, 781 F.2d at 771.

10       Addtionally, in stating his claim, Plaintiff specifies the roles that each named Defendant,

11   with the exception of one, played in creating, implementing or enforcing the policy at CTF and

12   other CDCR facilities. Pl.'s Compl. 3(a)-3(e). The one Defendant not specifically referred to,

13   James Tilton, was California's Secretary of the Department of Corrections and Rehabilitation at

14   the time of this suit and should have been aware of the approved-vendor policy's existence and the

15   consequences of its implementation and enforcement. *Id.* at 2-2(a), 3(f). That is why Plaintiff

16   alleges that "Defendant[ ] James Tilton's acts and omissions in[ ] maintaining [the approved-

17   vendor policy] were a substantial factor in violating Plaintiff's [religious] right[s]." *Id.*

18       Plaintiff alleges that all Defendants named acted under color of state law in participating,

19   directing or failing to prevent violations of Plaintiff's constitutionally and statutorily protected

20   religious rights. Pl.'s Compl. 3(e)-3(h). Plaintiff also alleges that the violations of his rights were

21   sanctioned by an official policy. *Id.* This Court should thus not dismiss Plaintiff's complaint for

22   failure to state a claim under Fed. R. Civ. P. 12(b)(6).

23

24       **B.    Defendants cannot claim qualified immunity from liability for civil damages under § 1983.**

25       A government official who could otherwise claim qualified immunity for civil damages

26   under § 1983 cannot do so if the official's conduct violated a clearly established law that a

27   reasonable official should know about. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

28

1    In this case, CDCR created its approved vendor policy on March 2, 2005.  Pl.'s Compl.

2    3(a).  CTF implemented the policy at its facility on June 7, 2006.  *Id.* at 3(b).  Plaintiff was first

3    denied his CDs in accordance with the approved-vendor policy on September 25, 2006.  *Id.*  The

4    Eastern District handed down its ruling in *JCPM*, which involved a case whose facts mirror those

5    of the case at hand, on September 28, 2006.  *JCPM*, 456 F. Supp. at 1188.  In *JCPM*, the Eastern

6    District found that CDCR's approved-vendor policy did not survive challenges under the First

7    Amendment or RLUIPA.  *Id.* at 1202, 1205.  All of Plaintiff's administrative appeals within the

8    CDCR system took place on September 28, 2006 or later.  Pl.'s Compl. 3(b)-3(e).

9    Defendants contend that the decision in *JCPM* was strictly limited to the CDCR facility in

10   that case "and the specific plaintiff ministry involved therein."  *Id.* at 7 n. 4.  In *JCPM*, the Eastern

11   District did state that "the scope of this lawsuit is limited to the civil rights of plaintiff JCPM and

12   the individual plaintiffs in relation to the policies and practices at (the Substance Abuse

13   Treatement Facility in Corcoran) only."  *JCPM*, 456 F. Supp. at 1195.  However, that limitation

14   owes its existence to the fact that the evidence was not fully developed regarding statewide

15   infringements on inmates' constitutionally and statutorily protected religious rights resulting from

16   the approved-vendor policy's enforcement.  *Id.*  The fact that approved-vendor policy was found

17   to violate both the Constitution and RLUIPA in *JCPM* should have put CDCR and CTF on notice

18   that prison facilities throughout the CDCR system would violate inmates' religious rights by

19   denying them access to religious materials in accordance with the approved-vendor policy.  *Id.* at

20   1202, 1205.  Defendants' argument that they "reasonably believed that they were properly

21   enforcing lawful CDCR policy in withholding CDs delivered to Plaintiff from a non-approved

22   vendor" thus does not hold water.  Def.'s Mot. Dismiss 15.

23   Since CDCR's approved-vendor policy did not past muster in *JCPM*, it stands to reason

24   that the policy would not survive a constitutional challenge in this case.  This court should thus not

25   dismiss Plaintiff's complaint for failure to state a claim.

26

27

28

1

### CONCLUSION

2    This case represents a straightforward review of the constitutionality of CDCR's approved-

3  vendor policy.  The language of that policy is undisputed.  Indeed, in view of the nearly identical

4  facts and law presented in JCPM, Defendants' motion to dismiss this case for failure to state a

5  claim is without merit and should be denied.

6    Dated: June 25, 2008

7

8                                          Respectfully submitted,

9

10    _____

11                                          Matthew B. McReynolds
                                            Kevin T. Snider
12                                          Staff Counsel
                                            Pacific Justice Institute
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28