1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Acting Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  KYLE A. LEWIS, State Bar No. 201041
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5677
     Fax: (415) 703-5843
8    Email: Kyle.Lewis@doj.ca.gov

9  Attorneys for Defendants James Tilton, Jeanne
   Woodford, Suzan Hubbard, Anthony P. Kane, Ben
10 Curry, W. J. Hill, B. Hedrick, and N. Grannis

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARMANDO VINCENT MUNOZ,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JAMES TILTON, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No. C 07-3846 JF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

In his Opposition to Defendants' Motion to Dismiss, Plaintiff argues that his claims should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint meets the threshold requirement for pleadings. Plaintiff also argues that his Complaint should not be dismissed because the Defendants' approved vendor policy violates Plaintiff's rights to freely exercise his religious beliefs. Lastly, Plaintiff contends that Defendants cannot claim qualified immunity from liability for civil damages under 42 U.S.C. § 1983.

As more thoroughly discussed below, Plaintiff's claims are not sufficiently plead and

Defs.' Reply Supp. Mot. to Dismiss　　　　　　　　　　　　　　　　　　　　　　Munoz v. Tilton, et al.
Case No. C 07-3846 JF

1

|   |   |
|---|---|
| 1 | should be dismissed. Plaintiff fails to state a claim against Defendants for violation of Plaintiff's |
| 2 | First Amendment right to the free exercise of religion. Plaintiff's allegations against certain |
| 3 | Defendants arising from their role in processing his administrative grievance or promulgation of |
| 4 | prison policies are not sufficiently plead to attach liability to these individuals. Furthermore, |
| 5 | Defendants are entitled to qualified immunity because their conduct was constitutionally valid. |
| 6 | Finally, Plaintiff fails to sufficiently allege the basis for an award of punitive damages, and his |
| 7 | request for this type of damages must be dismissed. |

1 should be dismissed. Plaintiff fails to state a claim against Defendants for violation of Plaintiff's First Amendment right to the free exercise of religion. Plaintiff's allegations against certain Defendants arising from their role in processing his administrative grievance or promulgation of prison policies are not sufficiently plead to attach liability to these individuals. Furthermore, Defendants are entitled to qualified immunity because their conduct was constitutionally valid. Finally, Plaintiff fails to sufficiently allege the basis for an award of punitive damages, and his request for this type of damages must be dismissed.

## STATEMENT OF THE CASE

Plaintiff is a prisoner in the California Department of Corrections and Rehabilitation currently incarcerated at the Correctional Training Facility (CTF), located in Soledad, California. On July 26, 2007, Plaintiff filed this action alleging that Defendants James Tilton, Jeanne Woodford, Suzan Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill, B. Hedrick, and N. Grannis (Defendants) violated his First Amendment right to the free exercise of religion by restricting his possession of religious materials in prison. The action stems from an event that occurred on September 25, 2006, when personnel working in a mail room at the Correctional Training Facility withheld a package of compact discs mailed to Plaintiff. (Court Document (CD) # 1 at 3(b).) These compact discs were withheld from Plaintiff because they came from an organization that was not on the list of approved vendors permitted to deliver materials to inmates in the custody of the California Department of Corrections and Rehabilitation (CDCR) under established department and facility operating procedures. (CD # 1 at Ex. A, p. 4.)

On May 22, 2008, Defendants filed a motion to dismiss Plaintiff's suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, for a determination that Defendants are entitled to qualified immunity, and that Plaintiff's request for punitive damages is not supported by the allegations of the Complaint. On June 25, 2008, Plaintiff filed his opposition to Defendants' motion to dismiss.[1] (CD # 21.)

---

[1] Under the Court's Order of Service, Plaintiff's opposition was originally due on June 23, 2008. (CD # 5, at 3.) On June 20, 2008, counsel for Defendants was contacted by the Pacific Justice Institute regarding a pending Association of Counsel on behalf of Plaintiff, which was ultimately

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

2

# ARGUMENT

## I.

### PLAINTIFF'S ASSERTIONS THAT THE DEFENDANTS' ACTIONS VIOLATE THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ARE IMPROPER BECAUSE THE COURT DID NOT FIND A COGNIZABLE CLAIM UNDER THAT LAW UPON SCREENING THE COMPLAINT.

In its Order of Service on Plaintiff's complaint, the Court found one cognizable claim--that Defendants allegedly violated Plaintiff's "First Amendment right to the free exercise of religion by restricting his possession of religious materials in prison." (CD # 5, at 2.) The Court did not find that Plaintiff stated a cognizable claim under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc (RLUIPA). Thus, any claims by Plaintiff that Defendants denied him the ability to practice his faith in violation of RLUIPA, or that he is entitled to relief under RLUIPA, should not be considered because no such claim exists in this action. (*See* Pl's Opp'n to Defs' Mot to Dismiss, at 4, 6-8. (CD # 21).

## II.

### THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE DEFENDANTS' ENFORCEMENT OF CDCR POLICY REGARDING RECEIPT OF MATERIALS FROM APPROVED VENDORS DOES NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE FREE EXERCISE OF RELIGION.

Defendants moved to dismiss Plaintiff's First Amendment claim because he failed to demonstrate how withholding the CDs under the CDCR policy prevented him from engaging in conduct mandated by his faith. *See Shakur v. Schiro*, 514 F.3d 878, 884 (9th Cir. 2008). Additionally, the CDCR policy to prevent introduction of materials into prisons from non-approved vendors serves a legitimate, reasonable, and constitutional penological interest in ensuring safety at its facilities. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987). In his opposition, Plaintiff raises a variety of RLUIPA-based issues regarding the viability of his Complaint, but as explained above, the Court did not

---

filed on June 23, 2008. (CD # 20.) As a professional courtesy and in the interests of saving the Court's resources in not having to consider a request for additional time, Defendants' counsel granted an extension to Plaintiff's counsel to file their opposition on or before June 25, 2008.

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

find a cognizable RLUIPA claim. Furthermore, Plaintiff's argument that his First Amendment claim is sufficiently plead is unconvincing and denies the legitimate basis for CDCR's approved vendor policy. For these reasons, Plaintiff's First Amendment claim must be dismissed.

### A. Plaintiff Fails to Sufficiently Allege that Receiving Religious CDs is Necessary for Him to Practice Sincerely Held Beliefs that Are Rooted in His Christian Faith.

Plaintiff claims that Defendants substantially burdened his freedom to exercise his religious beliefs by denying him access to the CDs delivered to him. In demonstrating the sincerity of his Christian faith, Plaintiff states that he "sincerely subscribes to Biblical preferences, as indicated by his refusal to attend religious services that do not preach them" and that his "beliefs are also religious in nature, as indicated by the multiple scriptural references he provided in his complaint." (CD # 21 at 8-9.) However, Plaintiff does not make a sufficient connection between these beliefs and the need to receive the CDs in question. Listening to CDs containing spoken words or music is one, but not the only, method by which a person practices his or her religion.

Defendants' actions in denying Plaintiff religious CDs do not substantially burden his ability to practice his Christian faith, rather Plaintiff's actions have. Plaintiff has chosen not to avail himself of the religious services offered at CTF, claiming that he does not attend the chapel at the institution due to his religious convictions that the ministry does not function according to Biblical standards. (CD # 1 at Ex. A, p. 11.) By his own admission, Plaintiff has prevented himself from hearing the word of God preached for a period of time. (*Id.*) Where Plaintiff, incarcerated as a result of his actions, refuses to avail himself of the religious programs offered at a prison facility, he cannot expect absolute access to other forms of religious materials as he may in the general public. This is a point accepted by Plaintiff in his own opposition--while inmates maintain their First Amendment rights to the free exercise of their religion, those rights are necessarily limited by virtue of their incarceration. (CD # 21 at 6, quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).) *Turner v. Safley*, 482 U.S. 78, 89 (1987).) Because he cannot demonstrate how Defendants have substantially burdened his practice of religion, Plaintiff's claim should be dismissed.

Defs.' Reply Supp. Mot. to Dismiss                                                                                                      *Munoz v. Tilton, et al.*
                                                                                                                                        Case No. C 07-3846 JF

### B. CDCR's Regulations Regarding Receipt of CDs from Approved Vendors Serves Legitimate Penological Interests and Is Constitutionally Valid.

Even if it is shown that prison officials burdened conduct that is mandated by Plaintiff's faith, there is no violation of Plaintiff's First Amendment rights if the restriction imposed by the state was reasonably related to legitimate penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). In order to determine whether a prison regulation is reasonable and constitutional, a four-part test is utilized to weigh the inmate's free exercise right against the state's legitimate penological interests. Where the state can demonstrate those legitimate interests, the regulation is valid. *Turner*, 482 U.S. at 89.

In applying the first step of the *Turner* test, Defendants demonstrate that there exists a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89. Plaintiff's opposition acknowledges that Defendants' concerns with respect to safety, security, and efficient operation of prisons "hav[e] some validity." (CD # 21 at 9-10.) Further, Plaintiff's citations to *Jesus Christ Prison Ministries v. Cal. Dep't of Corrs.*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006) (*JCPM*), do not address the variety of requirements that approved vendors must comply with in the CDCR policies at issue in the instant case. Plaintiff's attempts to minimize these requirements, which address legitimate security and licensing concerns and were not raised in the *JCPM* case, ignore a crucial aspect of prison operations. Taken as a whole, the regulations at issue serve the legitimate interest of preventing the introduction of contraband or otherwise unwanted material into prison facilities, including CDs delivered to inmates by non-approved vendors.

The second factor of the *Turner* test requires courts to determine whether alternative means of expressing Plaintiff's religion remain available. *Turner*, 482 U.S. at 90. Plaintiff claims that the services and amenities offered by CTF "do not satisfy his hunger for Biblical knowledge." (CD # 21 at 11.) Thus, Plaintiff is claiming that his ability to utilize the chaplain, chapel, and religious library, to receive written religious materials, to congregate with fellow inmates, and to have the unfettered ability to preach the word of God is insufficient for his religious needs. It is difficult to understand how in this multitude of alternative means of expressing one's faith,

Defs.' Reply Supp. Mot. to Dismiss    *Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

5

Plaintiff cannot find his religious sustenance. Moreover, Plaintiff does not adequately demonstrate how these CDs, purportedly containing sermons and music, will fulfill his religious needs.

Under the third *Turner* factor, courts must consider the impact of an accommodation on guards, other inmates, and prison resources. *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1992). In their moving papers, Defendants noted that creating a special class of religious mail to allow religious CDs into prisons could lead to a variety of problems at institutions. In his opposition, Plaintiff states that "Defendants' favorable-treatment argument might carry more weight in this case if Plaintiff has not alleged that a Buddhist inmate 'was already receiving religious . . . CDs from an outside source.'" (CD # 21 at 13.) However, Plaintiff fails to provide further information regarding those alleged CDs, including whether the outside source was an approved vendor, when the CDs were received, or what exactly the CDs contained. Without this information, and even if accepted in a light most favorable to Plaintiff, such an insufficient allegation regarding the receipt of a Buddhist CD cannot invalidate Defendants' contention that the third *Turner* factor weighs in their favor.

Lastly under the *Turner* test, courts must look to whether there is an absence of ready alternatives which would indicate the regulation's reasonableness. *Turner*, 482 U.S. at 90. As stated previously and in Defendants' moving papers, Plaintiff is provided with ready alternatives to religious CDs in the form of a functioning chapel, chaplain, chapel library, freedom of association with fellow inmates, and the ability to request any religious materials in written format. (CD # 18 at 10.) Furthermore, permitting inmates to receive religious CDs from non-approved vendors would cause substantial increased costs for Defendants. Because these materials would not be originating from known vendors whose packaging and security protocols have been established, Defendants would have to inspect each package received to check for contraband or disallowed material. This could take substantial time and resources from CDCR staff, and is unreasonable in light of the religious practice alternatives already available to inmates.

Because all four *Turner* factors weigh in Defendants' favor, Plaintiff's First Amendment

Defs.' Reply Supp. Mot. to Dismiss    *Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

6

claim fails, and this suit must be dismissed.

## III.

**PLAINTIFF'S CLAIMS AGAINST DEFENDANTS WOODFORD, TILTON, HUBBARD, KANE, CURRY, HILL, AND GRANNIS MUST BE DISMISSED BECAUSE THEY FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT A THEORY OF SUPERVISOR LIABILITY.**

Defendants Woodford, Tilton, Hubbard, Kane, Curry, Hill and Grannis moved to dismiss Plaintiff's claims against them on the grounds that insufficient evidence was provided regarding their knowledge of or participation in the alleged constitutional violation committed against the Plaintiff. In his opposition, Plaintiff claims that he specified the role of each named Defendant in creating, implementing, or enforcing the approved vendor policy that caused Plaintiff's constitutional deprivation. However, Plaintiff's assertions regarding each Defendant's role were generalized statements that cannot be the basis for the imposition of supervisor liability under a § 1983 claim. Accordingly, Plaintiff's claims against these certain Defendants must be dismissed.

In pleading the alleged roles of Defendants Woodford, Tilton, Hubbard, Kane, and Curry, Plaintiff states that their "acts and omissions in [implementing or maintaining the CDCR policy regarding approved vendors] were a substantial factor in violating Plaintiff's right to be free to exercise his religion guaranteed by the First Amendment." (CD # 1, at 3(e)-(g).) Furthermore, in pleading the alleged roles of Defendants Hill and Grannis, Plaintiff claimed that they "failed to take action when they became aware of Plaintiffs' injuries" and "[t]heir omissions were substantial factors in maintaining the violations of Plaintiff's rights to be free to exercise his religion guaranteed by the First Amendment." (CD # 1 at 3(g).)

However, as was argued in Defendants' moving papers, liability in a § 1983 claim will only attach to supervisors if they personally participated in an alleged constitutional violation, or had knowledge that their subordinates were violating another's constitutional rights and did nothing to prevent it. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, to bring a successful § 1983 claim against these Defendants, Plaintiff must allege and prove that these Defendants either personally committed acts which had a direct causal connection to Plaintiff's alleged constitutional violation, or that these Defendants knew of alleged constitutional violations

Defs.' Reply Supp. Mot. to Dismiss *Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

7

committed by their subordinates. *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986). Plaintiff's complaint fails to allege this causal link, and thus the noted Defendants cannot be held liable under a theory of supervisor liability.[2]

Plaintiffs's uniform assertion that supervisory Defendant personnel took part in the enactment and enforcement of one article in the voluminous Departmental Operations Manual is an insufficient basis upon which to mount a constitutional attack. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1016 (S.D. Cal. 2006) (Senior defendant prison official dismissed from suit where she neither knew of nor participated in any Constitutional violations). Furthermore, Plaintiff's allegation that Defendants Hill and Grannis failed to take action when they became aware of Plaintiff's injuries is a similarly inadequate means to implicate a constitutional violation on their part. In each instance, Plaintiff fails to make a necessary link between the Defendants' alleged wrongful conduct and the constitutional violation. Because Plaintiff failed to sufficiently allege supervisor liability on the part of these Defendants, they should be dismissed from this case.

## IV.

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

In their moving papers, Defendants assert that they are entitled to qualified immunity from suit because Plaintiff failed to demonstrate the his First Amendment rights were violated and they acted reasonably in withholding the CDs from Plaintiff based on legitimate penological reasons. In his opposition, Plaintiff contends that Defendants are not entitled to qualified immunity because they should have been aware of a court decision allegedly involving similar facts to Plaintiff's situation. However, as Plaintiff acknowledges, that court decision was specifically

---

2. Plaintiff cites to the decision in *Jesus Christ Prison Ministries v. California Dept. of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006), throughout his opposition for support. However, Plaintiff neglects to acknowledge that in that decision, the court dismissed Defendant Woodford, who was holding the same position as Director of CDCR at that time. Noting that "[n]o evidence before the court suggests Director Woodford's personal involvement in the issuing of that memorandum or in any other changes in mail policies at [the facility]," the court found that Woodford was not personally involved in imposing the mail policies. *Id.* at 1197. In the instant case, Plaintiff fails to demonstrate that Defendants Woodford, Tilton, or Hubbard played a significant role in effecting the mail policies at CTF that caused Plaintiff's alleged constitutional deprivation.

Defs.' Reply Supp. Mot. to Dismiss                          *Munoz v. Tilton, et al.*
                                                             Case No. C 07-3846 JF

limited in its scope. As such, Defendants are entitled to qualified immunity from suit as it relates to the alleged violations suffered by Plaintiff.

Plaintiff's assertion that Defendants are not entitled to qualified immunity because they should have been aware of the decision in *Jesus Christ Prison Ministries v. California Dep't of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006), is flawed. In his opposition, Plaintiff notes that the *JCPM* decision was issued three days *after* Plaintiff was not allowed to receive the CDs at the CTF mail room. (CD # 21 at 18.) Plaintiff also acknowledges that the scope of *JCPM* was limited to a single prison ministry, three inmate plaintiffs, and one CDCR facility located in the Eastern District of California. *Id*; s*ee also JCPM*, 456 F. Supp. 2d at 1195. As discussed below, these two undisputed facts demonstrate that Defendants are entitled to qualified immunity.

First, Plaintiff's own complaint states that Defendants Woodford, Tilton, Hubbard, Kane, and Curry caused Article 43 of the Department Operations Manual (DOM) to be implemented between March 2005 and June 2006. (CD # 1 at 3(a)-(b), (f).) Because these dates clearly precede the issuance of the *JCPM* decision, it is impossible for these Defendants to have known that, at the time the alleged deprivation of Plaintiff's First Amendment right occurred, their conduct was unlawful in promulgating the regulation. *See Saucier v. Katz*, 533 U.S. 194, 201–02 (2001.) Second, given that the *JCPM* court specifically limited its application and holding to a closed universe of persons and facilities, there is no way that Defendants Hedrick, Hill, and Grannis would have been aware of any potential application the decision had on their processing of the Plaintiff's administrative grievance. Plaintiff's appeals were resolved less than six months after the *JCPM* decision (CD # 1 at 3(e)), which plainly stated that the evidence in that case was not sufficiently developed to encompass all CDCR facilities. *JCPM*, 456 F. Supp. 2d at 1195. Plaintiff's assertion that this singular result "should have put CDCR and CTF on notice" of a system-wide issue ignores the decision's own limitations. (CD # 21 at 18.)

As discussed in Defendants' motion to dismiss, Plaintiff has not alleged sufficient facts to support a cognizable legal theory that Defendants violated his First Amendment right to the free exercise of religion by restricting his possession of religious CDs in prison. Furthermore, Plaintiff's acknowledgment of the timing and specific holding of the *JCPM* decision demonstrate

that Defendants acted as reasonable officials throughout the relevant period. Therefore, Defendants are entitled to qualified immunity.

V.

**PLAINTIFF FAILS TO STATE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR PUNITIVE DAMAGES.**

Defendants also moved the Court to dismiss Plaintiff's claim for an award of punitive damages on the grounds that the complaint fails to allege that Defendants acted with the requisite evil motive or callous indifference. Plaintiff's opposition does not sufficiently counter this aspect of Defendants' motion to dismiss, nor does Plaintiff supply additional information justifying punitive damages against Defendants in either their official or individual capacities. As such, Plaintiff's request for punitive damages should be dismissed.

**CONCLUSION**

For the reasons mentioned in this reply brief and in Defendants' moving papers, Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated: July 10, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

ROCHELLE C. EAST
Acting Senior Assistant Attorney General

JONATHAN L. WOLFF
Supervising Deputy Attorney General


/S/ KYLE A. LEWIS
KYLE A. LEWIS
Deputy Attorney General
Attorneys for Defendants James Tilton, Jeanne Woodford, Suzan Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill, B. Hedrick, and N. Grannis

Munoz--Reply to Opp to MTD.wpd
SF2008401051

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Armando Vincent Munoz v. James Tilton, et al.**

Case No.:    **C 07-3846 JF**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 22, 2008**, I served the attached

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Armando V. Munoz   (K-30296)
Correctional Training Facility-North
P.O. Box 705
Soledad, CA 93960-0705
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 22, 2008**, at San Francisco, California.

|                          |                          |
|--------------------------|--------------------------|
| R. Panganiban            | /S/ R. Panganiban        |
| Declarant                | Signature                |

20121802.wpd