1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   ROCHELLE C. EAST
    Acting Senior Assistant Attorney General
4   JONATHAN L. WOLFF
    Supervising Deputy Attorney General
5   KYLE A. LEWIS, State Bar No. 201041
    Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7     Telephone: (415) 703-5677
      Fax: (415) 703-5843
8     Email: Kyle.Lewis@doj.ca.gov

9   Attorneys for Defendants James Tilton, Jeanne
    Woodford, Suzan Hubbard, Anthony P. Kane, Ben
10  Curry, W. J. Hill, B. Hedrick, and N. Grannis

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15

    ARMANDO VINCENT MUNOZ,                    Case No. C 07-3846 JF
16
                                Plaintiff,    **DEFENDANTS' REPLY IN**
17                                            **SUPPORT OF MOTION TO**
                                              **DISMISS**
18          v.

    JAMES TILTON, et al.,
19
                                Defendants.
20

21                      __INTRODUCTION__

22         In his Opposition to Defendants' Motion to Dismiss, Plaintiff argues that his claims should

23  not be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint

24  meets the threshold requirement for pleadings.  Plaintiff also argues that his Complaint should

25  not be dismissed because the Defendants' approved vendor policy violates Plaintiff's rights to

26  freely exercise his religious beliefs.  Lastly, Plaintiff contends that Defendants cannot claim

27  qualified immunity from liability for civil damages under 42 U.S.C. § 1983.

28         As more thoroughly discussed below, Plaintiff's claims are not sufficiently plead and

Defs.' Reply Supp. Mot. to Dismiss                          *Munoz v. Tilton, et al.*
                                                            Case No. C 07-3846 JF

1  should be dismissed. Plaintiff fails to state a claim against Defendants for violation of Plaintiff's

2  First Amendment right to the free exercise of religion. Plaintiff's allegations against certain

3  Defendants arising from their role in processing his administrative grievance or promulgation of

4  prison policies are not sufficiently plead to attach liability to these individuals. Furthermore,

5  Defendants are entitled to qualified immunity because their conduct was constitutionally valid.

6  Finally, Plaintiff fails to sufficiently allege the basis for an award of punitive damages, and his

7  request for this type of damages must be dismissed.

8  ### STATEMENT OF THE CASE

9      Plaintiff is a prisoner in the California Department of Corrections and Rehabilitation

10  currently incarcerated at the Correctional Training Facility (CTF), located in Soledad, California.

11  On July 26, 2007, Plaintiff filed this action alleging that Defendants James Tilton, Jeanne

12  Woodford, Suzan Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill, B. Hedrick, and N. Grannis

13  (Defendants) violated his First Amendment right to the free exercise of religion by restricting his

14  possession of religious materials in prison. The action stems from an event that occurred on

15  September 25, 2006, when personnel working in a mail room at the Correctional Training

16  Facility withheld a package of compact discs mailed to Plaintiff. (Court Document (CD) # 1 at

17  3(b).) These compact discs were withheld from Plaintiff because they came from an organization

18  that was not on the list of approved vendors permitted to deliver materials to inmates in the

19  custody of the California Department of Corrections and Rehabilitation (CDCR) under

20  established department and facility operating procedures. (CD # 1 at Ex. A, p. 4.)

21      On May 22, 2008, Defendants filed a motion to dismiss Plaintiff's suit under Federal Rule

22  of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, for a

23  determination that Defendants are entitled to qualified immunity, and that Plaintiff's request for

24  punitive damages is not supported by the allegations of the Complaint. On June 25, 2008,

25  Plaintiff filed his opposition to Defendants' motion to dismiss.[1/] (CD # 21.)

26  —————————————————————————————

27      1. Under the Court's Order of Service, Plaintiff's opposition was originally due on June 23,
2008. (CD # 5, at 3.) On June 20, 2008, counsel for Defendants was contacted by the Pacific Justice

28  Institute regarding a pending Association of Counsel on behalf of Plaintiff, which was ultimately

Defs.' Reply Supp. Mot. to Dismiss                              *Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

2

1

## ARGUMENT

2

### I.

3
4
5

**PLAINTIFF'S ASSERTIONS THAT THE DEFENDANTS' ACTIONS VIOLATE THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ARE IMPROPER BECAUSE THE COURT DID NOT FIND A COGNIZABLE CLAIM UNDER THAT LAW UPON SCREENING THE COMPLAINT.**

6      In its Order of Service on Plaintiff's complaint, the Court found one cognizable claim--that

7 Defendants allegedly violated Plaintiff's "First Amendment right to the free exercise of religion

8 by restricting his possession of religious materials in prison." (CD # 5, at 2.) The Court did not

9 find that Plaintiff stated a cognizable claim under the Religious Land Use and Institutionalized

10 Persons Act of 2000, 42 U.S.C. § 2000cc (RLUIPA). Thus, any claims by Plaintiff that

11 Defendants denied him the ability to practice his faith in violation of RLUIPA, or that he is

12 entitled to relief under RLUIPA, should not be considered because no such claim exists in this

13 action. (*See* Pl's Opp'n to Defs' Mot to Dismiss, at 4, 6-8. (CD # 21).)

14

### II.

15
16
17

**THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE DEFENDANTS' ENFORCEMENT OF CDCR POLICY REGARDING RECEIPT OF MATERIALS FROM APPROVED VENDORS DOES NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT TO THE FREE EXERCISE OF RELIGION.**

18      Defendants moved to dismiss Plaintiff's First Amendment claim because he failed to

19 demonstrate how withholding the CDs under the CDCR policy prevented him from engaging in

20 conduct mandated by his faith. *See Shakur v. Schiro*, 514 F.3d 878, 884 (9th Cir. 2008).

21 Additionally, the CDCR policy to prevent introduction of materials into prisons from non-

22 approved vendors serves a legitimate, reasonable, and constitutional penological interest in

23 ensuring safety at its facilities. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987);

24 *Turner v. Safley*, 482 U.S. 78, 89 (1987). In his opposition, Plaintiff raises a variety of RLUIPA-

25 based issues regarding the viability of his Complaint, but as explained above, the Court did not

26 _____

27 filed on June 23, 2008. (CD # 20.) As a professional courtesy and in the interests of saving the
Court's resources in not having to consider a request for additional time, Defendants' counsel

28 granted an extension to Plaintiff's counsel to file their opposition on or before June 25, 2008.

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

1    find a cognizable RLUIPA claim.  Furthermore, Plaintiff's argument that his First Amendment

2    claim is sufficiently plead is unconvincing and denies the legitimate basis for CDCR's approved

3    vendor policy.  For these reasons, Plaintiff's First Amendment claim must be dismissed.

4          **A.**    **Plaintiff Fails to Sufficiently Allege that Receiving Religious CDs is Necessary for Him to Practice Sincerely Held Beliefs that Are Rooted in His Christian    Faith.**

5          Plaintiff claims that Defendants substantially burdened his freedom to exercise his

6    religious beliefs by denying him access to the CDs delivered to him.  In demonstrating the

7    sincerity of his Christian faith, Plaintiff states that he "sincerely subscribes to Biblical

8    preferences, as indicated by his refusal to attend religious services that do not preach them" and

9    that his "beliefs are also religious in nature, as indicated by the multiple scriptural references he

10   provided in his complaint."  (CD # 21 at 8-9.)  However, Plaintiff does not make a sufficient

11   connection between these beliefs and the need to receive the CDs in question.  Listening to CDs

12   containing spoken words or music is one, but not the only, method by which a person practices

13   his or her religion.

14         Defendants' actions in denying Plaintiff religious CDs do not substantially burden his

15   ability to practice his Christian faith, rather Plaintiff's actions have.  Plaintiff has chosen not to

16   avail himself of the religious services offered at CTF, claiming that he does not attend the chapel

17   at the institution due to his religious convictions that the ministry does not function according to

18   Biblical standards.  (CD # 1 at Ex. A, p. 11.)  By his own admission, Plaintiff has prevented

19   himself from hearing the word of God preached for a period of time.  (*Id.*)  Where Plaintiff,

20   incarcerated as a result of his actions, refuses to avail himself of the religious programs offered at

21   a prison facility, he cannot expect absolute access to other forms of religious materials as he may

22   in the general public.  This is a point accepted by Plaintiff in his own opposition--while inmates

23   maintain their First Amendment rights to the free exercise of their religion, those rights are

24   necessarily limited by virtue of their incarceration. (CD # 21 at 6, quoting *O'Lone v. Estate of*

25   *Shabazz*, 482 U.S. 342, 348 (1987).) *Turner v. Safley*, 482 U.S. 78, 89 (1987).)  Because he

26   cannot demonstrate how Defendants have substantially burdened his practice of religion,

27   Plaintiff's claim should be dismissed.

28

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

1       **B.**    **CDCR's Regulations Regarding Receipt of CDs from Approved Vendors
Serves Legitimate Penological Interests and Is Constitutionally Valid.**

2

3       Even if it is shown that prison officials burdened conduct that is mandated by Plaintiff's

4  faith, there is no violation of Plaintiff's First Amendment rights if the restriction imposed by the

5  state was reasonably related to legitimate penological objectives. *O'Lone v. Estate of Shabazz*,

6  482 U.S. 342, 349 (1987). In order to determine whether a prison regulation is reasonable and

7  constitutional, a four-part test is utilized to weigh the inmate's free exercise right against the

8  state's legitimate penological interests. Where the state can demonstrate those legitimate

9  interests, the regulation is valid. *Turner*, 482 U.S. at 89.

10       In applying the first step of the *Turner* test, Defendants demonstrate that there exists a

11  "valid, rational connection between the prison regulation and the legitimate governmental interest

12  put forward to justify it." *Id.* at 89. Plaintiff's opposition acknowledges that Defendants'

13  concerns with respect to safety, security, and efficient operation of prisons "hav[e] some

14  validity." (CD # 21 at 9-10.) Further, Plaintiff's citations to *Jesus Christ Prison Ministries v.*

15  *Cal. Dep't of Corrs.*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006) (*JCPM*), do not address the variety

16  of requirements that approved vendors must comply with in the CDCR policies at issue in the

17  instant case. Plaintiff's attempts to minimize these requirements, which address legitimate

18  security and licensing concerns and were not raised in the *JCPM* case, ignore a crucial aspect of

19  prison operations. Taken as a whole, the regulations at issue serve the legitimate interest of

20  preventing the introduction of contraband or otherwise unwanted material into prison facilities,

21  including CDs delivered to inmates by non-approved vendors.

22       The second factor of the *Turner* test requires courts to determine whether alternative means

23  of expressing Plaintiff's religion remain available. *Turner*, 482 U.S. at 90. Plaintiff claims that

24  the services and amenities offered by CTF "do not satisfy his hunger for Biblical knowledge."

25  (CD # 21 at 11.) Thus, Plaintiff is claiming that his ability to utilize the chaplain, chapel, and

26  religious library, to receive written religious materials, to congregate with fellow inmates, and to

27  have the unfettered ability to preach the word of God is insufficient for his religious needs. It is

28  difficult to understand how in this multitude of alternative means of expressing one's faith,

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

1    Plaintiff cannot find his religious sustenance.  Moreover, Plaintiff does not adequately

2    demonstrate how these CDs, purportedly containing sermons and music, will fulfill his religious

3    needs.

4         Under the third *Turner* factor, courts must consider the impact of an accommodation on

5    guards, other inmates, and prison resources.  *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1992).  In

6    their moving papers, Defendants noted that creating a special class of religious mail to allow

7    religious CDs into prisons could lead to a variety of problems at institutions.  In his opposition,

8    Plaintiff states that "Defendants' favorable-treatment argument might carry more weight in this

9    case if Plaintiff has not alleged that a Buddhist inmate 'was already receiving religious . . . CDs

10   from an outside source.'"  (CD # 21 at 13.)  However, Plaintiff fails to provide further information

11   regarding those alleged CDs, including whether the outside source was an approved vendor, when

12   the CDs were received, or what exactly the CDs contained.  Without this information, and even if

13   accepted in a light most favorable to Plaintiff, such an insufficient allegation regarding the receipt

14   of a Buddhist CD cannot invalidate Defendants' contention that the third *Turner* factor weighs in

15   their favor.

16        Lastly under the *Turner* test, courts must look to whether there is an absence of ready

17   alternatives which would indicate the regulation's reasonableness.  *Turner*, 482 U.S. at 90.  As

18   stated previously and in Defendants' moving papers, Plaintiff is provided with ready alternatives

19   to religious CDs in the form of a functioning chapel, chaplain, chapel library, freedom of

20   association with fellow inmates, and the ability to request any religious materials in written

21   format.  (CD # 18 at 10.)  Furthermore, permitting inmates to receive religious CDs from non-

22   approved vendors would cause substantial increased costs for Defendants.  Because these

23   materials would not be originating from known vendors whose packaging and security protocols

24   have been established, Defendants would have to inspect each package received to check for

25   contraband or disallowed material.  This could take substantial time and resources from CDCR

26   staff, and is unreasonable in light of the religious practice alternatives already available to

27   inmates.

28        Because all four *Turner* factors weigh in Defendants' favor, Plaintiff's First Amendment

Defs.' Reply Supp. Mot. to Dismiss                                      *Munoz v. Tilton, et al.*
                                                                        Case No. C 07-3846 JF

1    claim fails, and this suit must be dismissed.

2                                              **III.**

3         **PLAINTIFF'S CLAIMS AGAINST DEFENDANTS WOODFORD, TILTON,
          HUBBARD, KANE, CURRY, HILL, AND GRANNIS MUST BE DISMISSED**
4         **BECAUSE THEY FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT
          A THEORY OF SUPERVISOR LIABILITY.**

5

6         Defendants Woodford, Tilton, Hubbard, Kane, Curry, Hill and Grannis moved to dismiss

7    Plaintiff's claims against them on the grounds that insufficient evidence was provided regarding

8    their knowledge of or participation in the alleged constitutional violation committed against the

9    Plaintiff. In his opposition, Plaintiff claims that he specified the role of each named Defendant in

10   creating, implementing, or enforcing the approved vendor policy that caused Plaintiff's

11   constitutional deprivation. However, Plaintiff's assertions regarding each Defendant's role were

12   generalized statements that cannot be the basis for the imposition of supervisor liability under a §

13   1983 claim. Accordingly, Plaintiff's claims against these certain Defendants must be dismissed.

14        In pleading the alleged roles of Defendants Woodford, Tilton, Hubbard, Kane, and Curry,

15   Plaintiff states that their "acts and omissions in [implementing or maintaining the CDCR policy

16   regarding approved vendors] were a substantial factor in violating Plaintiff's right to be free to

17   exercise his religion guaranteed by the First Amendment." (CD # 1, at 3(e)-(g).) Furthermore, in

18   pleading the alleged roles of Defendants Hill and Grannis, Plaintiff claimed that they "failed to

19   take action when they became aware of Plaintiffs' injuries" and "[t]heir omissions were

20   substantial factors in maintaining the violations of Plaintiff's rights to be free to exercise his

21   religion guaranteed by the First Amendment." (CD # 1 at 3(g).)

22        However, as was argued in Defendants' moving papers, liability in a § 1983 claim will only

23   attach to supervisors if they personally participated in an alleged constitutional violation, or had

24   knowledge that their subordinates were violating another's constitutional rights and did nothing to

25   prevent it. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, to bring a successful §

26   1983 claim against these Defendants, Plaintiff must allege and prove that these Defendants either

27   personally committed acts which had a direct causal connection to Plaintiff's alleged

28   constitutional violation, or that these Defendants knew of alleged constitutional violations

Defs.' Reply Supp. Mot. to Dismiss                                              *Munoz v. Tilton, et al.*
                                                                                Case No. C 07-3846 JF

1  committed by their subordinates. *Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986).

2  Plaintiff's complaint fails to allege this causal link, and thus the noted Defendants cannot be held

3  liable under a theory of supervisor liability.[2/]

4       Plaintiffs's uniform assertion that supervisory Defendant personnel took part in the

5  enactment and enforcement of one article in the voluminous Departmental Operations Manual is

6  an insufficient basis upon which to mount a constitutional attack. *See Walker v. Woodford*, 454 F.

7  Supp. 2d 1007, 1016 (S.D. Cal. 2006) (Senior defendant prison official dismissed from suit where

8  she neither knew of nor participated in any Constitutional violations). Furthermore, Plaintiff's

9  allegation that Defendants Hill and Grannis failed to take action when they became aware of

10  Plaintiff's injuries is a similarly inadequate means to implicate a constitutional violation on their

11  part. In each instance, Plaintiff fails to make a necessary link between the Defendants' alleged

12  wrongful conduct and the constitutional violation. Because Plaintiff failed to sufficiently allege

13  supervisor liability on the part of these Defendants, they should be dismissed from this case.

14  **IV.**

15  **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

16       In their moving papers, Defendants assert that they are entitled to qualified immunity from

17  suit because Plaintiff failed to demonstrate the his First Amendment rights were violated and they

18  acted reasonably in withholding the CDs from Plaintiff based on legitimate penological reasons.

19  In his opposition, Plaintiff contends that Defendants are not entitled to qualified immunity

20  because they should have been aware of a court decision allegedly involving similar facts to

21  Plaintiff's situation. However, as Plaintiff acknowledges, that court decision was specifically

22  

___

23      2. Plaintiff cites to the decision in *Jesus Christ Prison Ministries v. California Dept. of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006), throughout his opposition for support.

24  However, Plaintiff neglects to acknowledge that in that decision, the court dismissed Defendant Woodford, who was holding the same position as Director of CDCR at that time. Noting that "[n]o

25  evidence before the court suggests Director Woodford's personal involvement in the issuing of that memorandum or in any other changes in mail policies at [the facility]," the court found that

26  Woodford was not personally involved in imposing the mail policies. *Id.* at 1197. In the instant

27  case, Plaintiff fails to demonstrate that Defendants Woodford, Tilton, or Hubbard played a significant role in effecting the mail policies at CTF that caused Plaintiff's alleged constitutional

28  deprivation.

Defs.' Reply Supp. Mot. to Dismiss

*Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

1 | limited in its scope. As such, Defendants are entitled to qualified immunity from suit as it relates

2 | to the alleged violations suffered by Plaintiff.

3 |      Plaintiff's assertion that Defendants are not entitled to qualified immunity because they

4 | should have been aware of the decision in *Jesus Christ Prison Ministries v. California Dep't of*

5 | *Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006), is flawed. In his opposition, Plaintiff notes

6 | that the *JCPM* decision was issued three days *after* Plaintiff was not allowed to receive the CDs at

7 | the CTF mail room. (CD # 21 at 18.) Plaintiff also acknowledges that the scope of *JCPM* was

8 | limited to a single prison ministry, three inmate plaintiffs, and one CDCR facility located in the

9 | Eastern District of California. *Id*; *see also JCPM*, 456 F. Supp. 2d at 1195. As discussed below,

10 | these two undisputed facts demonstrate that Defendants are entitled to qualified immunity.

11 |      First, Plaintiff's own complaint states that Defendants Woodford, Tilton, Hubbard, Kane,

12 | and Curry caused Article 43 of the Department Operations Manual (DOM) to be implemented

13 | between March 2005 and June 2006. (CD # 1 at 3(a)-(b), (f).) Because these dates clearly

14 | precede the issuance of the *JCPM* decision, it is impossible for these Defendants to have known

15 | that, at the time the alleged deprivation of Plaintiff's First Amendment right occurred, their

16 | conduct was unlawful in promulgating the regulation. *See Saucier v. Katz,* 533 U.S. 194, 201–02

17 | (2001.) Second, given that the *JCPM* court specifically limited its application and holding to a

18 | closed universe of persons and facilities, there is no way that Defendants Hedrick, Hill, and

19 | Grannis would have been aware of any potential application the decision had on their processing

20 | of the Plaintiff's administrative grievance. Plaintiff's appeals were resolved less than six months

21 | after the *JCPM* decision (CD # 1 at 3(e)), which plainly stated that the evidence in that case was

22 | not sufficiently developed to encompass all CDCR facilities. *JCPM*, 456 F. Supp. 2d at 1195.

23 | Plaintiff's assertion that this singular result "should have put CDCR and CTF on notice" of a

24 | system-wide issue ignores the decision's own limitations. (CD # 21 at 18.)

25 |      As discussed in Defendants' motion to dismiss, Plaintiff has not alleged sufficient facts to

26 | support a cognizable legal theory that Defendants violated his First Amendment right to the free

27 | exercise of religion by restricting his possession of religious CDs in prison. Furthermore,

28 | Plaintiff's acknowledgment of the timing and specific holding of the *JCPM* decision demonstrate

Defs.' Reply Supp. Mot. to Dismiss                                               *Munoz v. Tilton, et al.*
Case No. C 07-3846 JF

1  that Defendants acted as reasonable officials throughout the relevant period.  Therefore,

2  Defendants are entitled to qualified immunity.

3  V.

4  **PLAINTIFF FAILS TO STATE SUFFICIENT FACTS TO SUPPORT
A CLAIM FOR PUNITIVE DAMAGES.**

5

6  Defendants also moved the Court to dismiss Plaintiff's claim for an award of punitive

7  damages on the grounds that the complaint fails to allege that Defendants acted with the requisite

8  evil motive or callous indifference.  Plaintiff's opposition does not sufficiently counter this aspect

9  of Defendants' motion to dismiss, nor does Plaintiff supply additional information justifying

10  punitive damages against Defendants in either their official or individual capacities.  As such,

11  Plaintiff's request for punitive damages should be dismissed.

12  **CONCLUSION**

13  For the reasons mentioned in this reply brief and in Defendants' moving papers, Defendants

14  respectfully request that the Court grant their Motion to Dismiss.

15

16  Dated:  July 10, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

ROCHELLE C. EAST
Acting Senior Assistant Attorney General

JONATHAN L. WOLFF
Supervising Deputy Attorney General


/S/ KYLE A. LEWIS
KYLE A. LEWIS
Deputy Attorney General
Attorneys for Defendants James Tilton, Jeanne Woodford, Suzan
Hubbard, Anthony P. Kane, Ben Curry, W. J. Hill, B. Hedrick,
and N. Grannis

27  ReplyMunoz20122053.wpd
SF2008401051

28

Defs.' Reply Supp. Mot. to Dismiss