**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARMANDO VINCENT MUNOZ, | Case No.: 5:07-CV-03846 EJD |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JAMES TILTON, et al., | |
| Defendants. | **[Re: Docket Nos. 39, 44]** |

Plaintiff Armando Vincent Munoz ("Plaintiff" or "Munoz"), a prisoner in the custody of the California Department of Corrections and Rehabilitation, has brought this civil action pursuant to 42 U.S.C. § 1983. Presently before the Court are Defendants' Motion to Dismiss the Amended Complaint and cross-motions for summary judgment filed by both parties. For the reasons explained herein, the Court GRANTS Defendants' Motion to Dismiss.

**I. Background**

    **A. Plaintiff Munoz's Incarceration**

Plaintiff Munoz has been incarcerated since May 18, 1996, and became an inmate in the California Department of Corrections and Rehabilitation ("CDCR") on November 22, 1996. Am.

1

Compl., Dkt. No. 25, ¶¶ 13, 15. At the time of the incident underlying this lawsuit, Munoz was housed at Correctional Training Facility ("CTF"), but he was subsequently transferred and is currently housed at California State Prison, Solano. Declaration of I. Palmer ISO Def.'s MSJ ("Palmer Decl."), Dkt. No. 45, ¶ 3.

Munoz asserts that, at the time of his incarceration, he began living as a Christian and has received Christian materials from various sources, including Christian ministries. Am. Compl. ¶¶ 14, 16; see also Declaration of Kevin T. Snider ISO Pl.'s MSJ ("Snider Decl."), Dkt. No. 42, Ex. B at 19:16-18, 20:9-19. Munoz avers that as part of his religious beliefs he "must hear messages from a variety of ministers to have the Word of God confirmed in his heart." Am. Compl. ¶ 19; see also Snider Decl. Ex. B at 37:2-38:5. As a result, Munoz received cassette tapes and compact discs ("CDs") containing sermons and worship music from a variety of Christian ministries, including Abundant Life Foursquare Church ("Abundant Life"). Am. Compl. ¶ 16.

### B. Article 43 and Operations Procedure 26

Article 43 of Chapter 5 of the CDCR Departmental Operations Manual "standardizes allowable inmate property and enumerates in great detail the types and quantities of property an inmate is allowed to possess based on the inmate's classification." Id. ¶ 20. The policy limits the sources from which personal property can be obtained to "approved vendors" only. Id. Article 43 also "provides that inmates may acquire personal property using funds in their inmate trust account only from departmentally approved vendors." Declaration of B. Hedrick ISO Def.'s MSJ ("Hedrick Decl."), Dkt. No. 46, ¶ 3.

On March 7, 2005, Defendant Suzan Hubbard, the Deputy Director of Adult Institutions, issued a memorandum requiring all CDCR institutions to implement Article 43. Am. Compl. ¶ 21. Subsequently, on December 12, 2005, Defendant Anthony P. Kane, the Warden at CTF until June 7, 2006, "issued a memorandum to the inmate population at CTF indicating that Article 43 would be fully implemented . . . [and] would be effective on Jan 1, 2006." Id. at ¶¶ 8, 22. On May 11,

Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2006, a list of the approved vendors from which inmates could receive or purchase personal property was issued. Id. at ¶ 23. CTF then implemented Operational Procedure 26 on June 7, 2006, "to bring CTF into compliance with Article 43." Id. at ¶ 24. Operations Procedure 26 implemented the policies and procedures of Article 43, governing inmate property receipt and possession at CTF. Hedrick Decl. ¶ 4; see also Snider Decl. Ex. H.

Pursuant to Operations Procedure 26, "approved vendors must assemble, sort, package, and process inmates' property purchases in manners designed to ensure that inmates do not receive contraband material from outside sources." Hedrick Decl. ¶ 4; see Snider Decl. Ex. H. The requirements are enforced to "enhance CTF's security environment for staff and inmates by limiting the opportunities for weapons, drugs, communications, and other illicit materials from entering the institution. The approved-vendor policy also promotes efficient operations because it reduces the amount of staff time that is needed to sort, review, and screen materials being delivered to inmates at the institution." Hedrick Decl. ¶ 4. Inmates in "appropriate privilege group[s] may possess compact discs containing audio recordings" if they are commercially manufactured. Hedrick Decl. ¶ 5; see Snider Decl. Ex. H.

### C. Alleged Enforcement of the Policy Against Munoz

On Sept 25, 2006, Munoz attempted to retrieve Christian CDs mailed to him from Abundant Life at CTF's North Facility Property Room. Am. Compl. ¶ 25; see also Snider Decl. Ex. B at 18:19-19:1, 50:14-18. However, the Property Room attendant "informed Munoz that he could not receive religious materials from any Christian ministries because no Christian ministries were on the approved-vendor list." Am. Compl. ¶ 25; see also Snider Decl. Ex. B at 18:19-19:1. After Munoz's CDs were withheld, he filed an administrative grievance seeking their release. See Am. Compl. ¶¶ 26-27; Snider Decl. Ex. B at 52:13-16. The Property Room attendant agreed to hold the CDs pending Munoz's administrative appeal. Am. Compl. ¶ 26; see also Snider Decl. Ex. B at 52:1-3, 13-16.

3
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Hedrick was a Correctional Business Manager II at CTF in 2006. Decl. Hedrick ¶ 2. In November 2006, Hedrick interviewed Munoz concerning his grievance. Id. at ¶ 6. Hedrick informed Munoz that the materials could not be received pursuant to CTF's policies because they did not come from an approved vendor. Id. Hedrick asserts that the CDs were not denied because of their religious content, but rather "because they were not commercially manufactured compact discs from an approved vendor, and thus posed potential security concerns." Id. at ¶ 8.

On or about November 2, 2006, Hedrick advised Munoz that he could receive transcribed versions of the CDs if the ministry that sent the discs was willing to transcribe the content into written format. Hedrick Decl. ¶ 7; see also Am. Compl. ¶ 29. Additionally, Hedrick informed Munoz that CTF's Protestant Chaplain, Judge Lindsey, could possibly receive a donation of the CDs to the chapel, where Munoz could subsequently check the CDs out from the chapel library to listen to them. Hedrick Decl. ¶ 7; see also Am. Compl. ¶ 29; Snider Decl. Ex. B at 55:12-15. On November 20, 2006, Munoz spoke with Chaplain Lindsey about this possibility, but Chaplain Lindsey refused to receive the CDs because he was unable to receive materials for individual inmates and accommodate all requests due to limited space and resources. Hedrick Decl. ¶ 7; see also Am. Compl. ¶ 30; Snider Decl. Ex. B at 57:15-19. As a result, Munoz could not possess the private, non-commercial CDs and Chaplain Lindsey was unable to accept them, so the CTF Property Room did not release the Abundant Life CDs to Munoz. Hedrick Decl. ¶ 7.

Munoz subsequently resubmitted his administrative appeal for Second Level Review on November 20, 2006. Am. Compl. ¶ 31. The Second Level Review denied Munoz's appeal, stating that all tapes and CDs must be purchased through approved vendors as articulated in Operations Procedure 26. Id. Munoz then resubmitted the appeal to the Director's Level of Review, which denied the appeal on March 22, 2007. Id. at ¶ 32.

4
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### D. The Lawsuit

On July 26, 2007, Munoz filed a Complaint naming the following as Defendants: James Tilton, Secretary of the California Department of Corrections and Rehabilitation; Jeanne Woodford, Director of the California Department of Corrections in the CDCR; Suzan Hubbard, Deputy Director of Adult Corrections in the CDCR; Anthony P. Kane, Warden of CTF; Ben Curry, Warden of CTF; W.J. Hill, Associate Warden at CTF; B. Hedrick, Business Manager II, Contract Management Branch II at CTF; and N. Grannis, Chief of Inmate Appeals for the CDCR. See Compl., Dkt. No. 1. In the Complaint, Munoz asserted that the implementation of Article 43 and denial of the Abundant Life CDs violated his right to free exercise of religion under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc), freedom of speech under the First Amendment, and equal protection of the laws as guaranteed by the Fourteenth Amendment. Id.

After the Complaint was dismissed in an Order by Judge Jeremy Fogel on March 26, 2009, Munoz filed an Amended Complaint asserting the same causes of action on May 29, 2009. See Am. Compl., Dkt. No. 25.

### E. Plaintiff Munoz's Transfer

After filing the Amended Complaint, Munoz was transferred from CTF to California State Prison, Solano ("Solano") in September 2009. Palmer Decl. ¶ 3. Solano houses Level II and III inmates. Id. Munoz is classified for Level III housing according to his most recent Unit Classification Committee hearing held on February 15, 2012, and is granted all privileges afforded CDCR Level III inmates. Id.

Since transferring to Solano, Munoz has received multiple religious preaching CDs. Declaration of Kyle A. Lewis ISO Def.'s MSJ ("Lewis Decl."), Dkt. No. 47, Ex. A at 72: 22-24. Despite the fact that Article 43 is still in place, Munoz has been receiving religious preaching CDs while incarcerated at Solano and currently has approximately forty CDs. Id. at 75:18-23, 73:18-23.

5

Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Munoz asserted during his deposition that all of his religious needs are being met. Id. at 76:5-7. When asked whether all Munoz's "religious needs for hearing the word of God [are] being met right now," Munoz responded, "Yes." Id.

### F. The Present Motions

Defendants now move to dismiss Munoz's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) on grounds that the case is moot due to the fact that Munoz is no longer being housed at CTF. Def.'s MSJ, Dkt. No. 44, 1:6-8, 8:17-19. The parties have also cross-moved for summary judgment on the grounds that, in light of the lack of disputed issues of material fact, each is entitled to judgment as a matter of law on the substantive issues of Plaintiff Munoz's claims. Id. at 1:9-14, 8:23-26. On March 22, 2013, the Court heard oral arguments of counsel on these motions. See Dkt. No. 57.

## II.   Legal Standard

A party can file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Mootness . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [so it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). Therefore, a Rule 12(b)(1) motion may be either a facial or factual challenge. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

A facial 12(b)(1) motion to dismiss involves an inquiry confined to the allegations in the complaint. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction

6
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

appears from the face of the complaint itself. Thornhill Publ'g Co. v. General Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979).

On a factual challenge, such as the one before this Court, the party opposing the motion must produce affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a factual attack, the court need not presume the plaintiff's allegations are true. White, 227 F.3d at 1242. In the absence of a full-fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996). Disputed facts related to subject matter should be treated as they would in a motion for summary judgment. Id.

## III. Discussion

### A. Mootness

Plaintiff Munoz's transfer from CTF to Solano calls into question the issue of mootness. "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975), and Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991)). "As a general rule . . . voluntary cessation of allegedly illegal conduct does not make a case moot. But a case may become moot if (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir. 1985) (internal quotations omitted).

7
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### B. The Parties' Arguments

Defendants argue that Munoz's transfer to another prison has rendered moot his pending claims for injunctive relief to the prison's policy. See Dilley, 64 F.3d at 1368. Defendants argue that Munoz has not demonstrated a reasonable expectation that he will be transferred back to CTF where the injury would recur. Def.'s MSJ, Dkt. No. 44, 11:17-18. Moreover, since Munoz's transfer, he has "received numerous religious preaching compact discs at Solano [and] his religious needs to hear the word of God are currently being met." Def.'s MSJ, Dkt. No. 44, at 9:21-24, 10:15-20; see also Lewis Decl., Dkt. No. 47, Ex. A at 17:2-7, 73:18-23, 76:5-7.

Plaintiff Munoz argues the case should not be dismissed as moot because "Defendants' voluntary cessation of the unlawful conduct cannot, in and of itself, moot the case as a matter of law." Pl.'s Opp., Dkt. No. 51, at 5:14-16; see City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982). Munoz argues that Defendants have not met their burden to show that the restrictions on religious materials will not recur because Article 43 is still in place as a statewide policy, and "Solano staff can, of their own volition, or compelled by superiors against their better judgment, enforce Article 43." Pl.'s Opp., Dkt. No. 51, at 6:21-22, 8:9-15. Finally, Munoz argues that the parties can only speculate as to Munoz's housing, so transfer from Solano still looms. Id. at 9:14-22.

### C. Plaintiff Munoz's Claims Are Moot

The Court finds that Plaintiff Munoz's claims for injunctive and declaratory relief are moot for two main reasons which will be explicated below: (1) Munoz's transfer and subsequent receipt of religious materials at Solano have eradicated the effects of the alleged violation at CTF; and (2) Munoz has failed to demonstrate a reasonable expectation that he would be transferred back to CTF, where the incident occurred and could recur. As such, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted without leave to amend.

8

Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In Preiser v. Newkirk, 422 U.S. 395 (1975), plaintiff Newkirk was transferred from a medium security to maximum security prison in New York allegedly due to his involvement with union formation. Id. at 398. "Newkirk and three of the other four prisoners transferred from Wallkill brought suit . . . [requesting] a declaratory judgment that the transfers were in violation of the Constitution and laws of the United States and an injunction ordering their return to Wallkill, expunging all record of their transfer, and prohibiting future transfers without a hearing." Id. Subsequently, Newkirk was transferred back to Wallkill and "had a memorandum placed in [his] file which explained the nature of the transfer, noted that the transfer was not for disciplinary reasons, and was not to have any bearing on eligibility for parole or the decisions of the time-allowance committee." Id. at 399. Newkirk was then transferred to minimum security facility in New York, making it "clear that correction authorities harbor no animosity toward Newkirk." Id. at 402.

The Preiser Court stated that the situation was "more than a '[m]ere voluntary cessation of allegedly illegal conduct,' where we would leave '[t]he defendant . . . free to return to his old ways,'" and there is "no reasonable expectation that the wrong will be repeated." Id. (internal citations omitted). The Court held that the issue did not fall within the mootness exception of capable of repetition, yet evading review, stating "[a]ny subjective fear Newkirk might entertain of being again transferred, under circumstances similar to those alleged in the complaint, or of suffering adverse consequences as a result of the 1972 transfer, is indeed remote and speculative and hardly casts that 'continuing and brooding presence' over him . . . ." Id. at 403-04.

In this case, similarly, Munoz's transfer from CTF has eradicated the effects of the alleged violations that occurred there. As noted, in Solano, where he is currently being housed, Munoz has not experienced the conduct he alleges amounts to RLUIPA and constitutional violations. As noted, Munoz has received approximately forty religious preaching CDs and has stated at his deposition that his religious needs are currently being met. See Lewis Decl., Dkt. No. 47, Ex. A at 73:18-23, 75:18-23, 76:5-7. Munoz argues that this situation amounts to a "voluntary cessation of

9
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

illegal conduct" to which mootness does not apply because Article 43 is applicable to Solano. However, the undisputed fact remains that Article 43 has not been enforced against him at his current location, and Munoz has received religious CDs. See Lewis Decl. at 75:18-23. In fact, Solano staff has not enforced the policy since Munoz's incarceration there in 2009. See id.

Moreover, Munoz has failed to demonstrate a reasonable expectation of returning to CTF. In Johnson v. Moore, the Ninth Circuit found that plaintiff Johnson's claims for injunctive relief relating to Clallam Bay Corrections Center ("CBCC") policies were moot because he failed to demonstrate a reasonable expectation of returning to CBCC. 948 F.2d 517, 519-20 (9th Cir. 1991). Johnson had made several Constitutional claims based on the conditions of his confinement in CBCC, including "injunctive relief from the 'publishers only' rule's application to softcover books and from the Clallam Bay's smoking policy," due process claims, freedom of religion, and Eighth Amendment claims. Id. at 519. Before the District Court made any decisions in the case, Johnson was transferred to a federal correctional facility in Washington, and prior to his appeal to the Ninth Circuit, Johnson was transferred to a federal prison in Arizona. Id. The court held that Johnson failed to demonstrate a reasonable expectation of transferring back to CBCC, which rendered moot his claim for injunctive relief. Id. at 520.

Similarly, there is no indication that Munoz has a reasonable expectation that he will be transferred from Solano back to CTF, even if his scores change so as to qualify him for a transfer. See Palmer Decl. ¶ 4. Solano houses Level II and III inmates, so if Munoz is reclassified for Level II housing at his yearly review, he could remain at Solano. Id. at ¶¶ 3-4. As such, Munoz's yearly review regarding transfer eligibility also fails to create a reasonable expectation that he will be transferred from Solano back to CTF. Nor are there pending requests to transfer Munoz from Solano to another CDCR institution; in fact, Munoz has stated that "[t]he parties can only engage in conjecture regarding Munoz' future housing assignment," Pl.'s Opp., Dkt. No. 51, at 10:3-4. Therefore, as in Johnson, Munoz's claim for injunctive relief is moot because he failed to demonstrate a reasonable expectation of returning to CTF.

10
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The situation presently before the Court is analogous to that of <u>Dilley v. Gunn</u>, in which the Ninth Circuit held the plaintiff Dilley's claim was moot where "Dilley has been transferred from Calipatria to another California state prison." 64 F.3d 1365, 1368 (9th Cir. 1995). Dilley, a former inmate at Calipatria alleged that the defendants had violated his right of access to the courts by failing to provide reasonable access to the prison law library. <u>Dilley</u>, 64 F.3d at 1367. The Ninth Circuit held that "Dilley's claim that he might be transferred back to Calipatria some time in the future is too speculative to prevent mootness." <u>Id.</u> at 1369 (internal quotation marks omitted). Similarly, Plaintiff Munoz merely suggests that he might be transferred back to CTF at some point in the future, which, as the <u>Dilley</u> court held, is "too speculative to prevent mootness." <u>See id.</u>

Several cases from the Eastern District of California are analogous to the case before this Court. In <u>Rodriguez v. Hubbard</u>, for example, plaintiff Rodriguez was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the alleged injury occurred. <u>Rodriguez v. Hubbard</u>, No. 1:10-CV-00858-DLB PC, 2012 WL 4490768 (E.D. Cal. Sept. 28, 2012). Rodriguez alleged that "Defendants refused to enforce state and federal laws which established rights protecting Native American religious practices and sacred religious artifacts . . . ." <u>Id.</u> The district court determined Rodriguez's claim for injunctive relief was moot because "Plaintiff [was] no longer incarcerated at KVSP." <u>Id.</u> The court stated that "[t]ransfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back." <u>Id.</u> (citing <u>Andrews v. Cervantes</u>, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007)); <u>see also</u> <u>Abel v. Martel</u>, No. 2:09-CV-1749 JAM CKD, 2013 WL 552416 (E.D. Cal. Feb. 13, 2013) (declaring that "injunctive relief against any of the defendants in this action would not be appropriate [because] the transfer of a prisoner generally moots any claim for injunctive relief unless plaintiff demonstrates a reasonable expectation of return to the prison where the claims arose," and that plaintiff failed to show a reasonable expectation of return); <u>Burton v. Clark</u>, No. 1:09-CV-00061-AWI, 2012 WL 3205425 (E.D. Cal. Aug. 3, 2012) (concluding that Plaintiff's RLUIPA claim for

11
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

injunctive relief was moot because he was no longer housed at the prison at issue and demonstrated no evidence of being transferred back).

Munoz cites Jesus Christ Prison Ministry v. California Dept. of Corrections,[1] to support his argument that this case is not moot. In that case, plaintiffs were sent religious materials from Jesus Christ Prison Ministry ("JCPM") and other ministries while incarcerated at California State Substance Abuse Treatment Facility ("SATF"). 456 F. Supp. 2d. 1188, 1193 (E.D. Cal. 2006). However, "pursuant to a new policy . . . prison officials began denying plaintiffs these religious materials because the literature was not sent from an 'approved vendor' and was thus considered contraband." Id. The defendants argued that the case was moot because the policy had changed so that the plaintiffs could once again receive materials from JCPM. Id. at 1194. The defendants asserted that "the issues with respect to these written materials are no longer 'live' and the parties therefore 'lack a legally cognizable interest' in the outcome of this action." Id. at 1196.

The primary distinguishing factor from the situation in Jesus Christ Prison Ministry and the present one is that the plaintiffs in that case were not transferred to a different facility. The Jesus Christ Prison Ministry court observed that the mail policies at SATF changed three times over a two year period, creating a "moving target" and "no concrete assurance that the policies in question [would] not be subject to further modification and change." Id. at 1196. Plaintiff Munoz, in contrast, has been removed from CTF (the facility where the alleged violations occurred) and transferred to Solano (the facility where he has stated that his religious needs are being met). Article 43 has not been enforced at Solano since its adoption through Operations Procedure 26 in 2006, and Munoz has not argued that his rights have been violated there. As such, there is no "moving target" that concerned the Jesus Christ Prison Ministry court.

---

[1] Although Jesus Christ Prison Ministry v. California Dept. of Corrections has been "Withdrawn Pursuant to Settlement" on April 16, 2007, this Court will analyze the reasoning of that court and distinguish it from the facts presently before the Court.

12
Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**V.	Conclusion and Order**

For the foregoing reasons, the Court finds that Plaintiff Munoz's claims in the Amended Complaint are moot. Accordingly, the Court orders the following: Defendants' Motion to Dismiss for lack of subject matter jurisdiction (Docket Item No. 44) is GRANTED WITH PREJUDICE and Plaintiff Munoz's Amended Complaint is DISMISSED WITHOUT LEAVE TO AMEND. Plaintiff Munoz's Motion for Summary Judgment (Docket Item No. 39) is DENIED.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: May 15, 2013

　　　　　　　　　　　　　　　　　　　　　　　　_____
EDWARD J. DAVILA
United States District Judge

13

Case No.: 5:07-CV-03846 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT